Daniel Weintraub - Bar #132111
James R. Selth - Bar #123420
Elaine V. Nguyen - Bar #256432
WEINTRAUB & SELTH, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: elaine@wsrlaw.net

Attorneys for Moving Party,

LONDON FINANCE GROUP, LTD.

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  2:13-cr-00062-SVW |
| Plaintiffs, | Hon. Stephen V. Wilson |
| vs. | **NOTICE OF MOTION AND MOTION FOR RELEASE OF PROPERTY SEIZED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)** |
| SHERMAN MAZUR, et al., | |
| Defendants. | |

Hearing:
Date:      August 3, 2015
Time:      11:00 a.m.
Place:     Courtroom 6
             312 No. Spring St.
             Los Angeles, CA 90012

**TO THE COURT, UNITED STATES OF AMERICA AND ALL OTHER PARTIES TO THIS ACTION:**

     **PLEASE TAKE NOTICE**, that on August 3, 2015, at 11:00 a.m. or as soon thereafter as counsel may be heard in the Courtroom of the Honorable Stephen V. Wilson, United States District Judge, Courtroom 6, 312 North Spring Street, Los

Angeles, California 90012, party in interest London Finance Group, Ltd. ("LFG") will and does hereby move pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for an order compelling Plaintiff United States of America (the "United States") to turnover and return the certificate for 718,494 restricted shares of Revolution Lighting Technologies, Inc. (the "Shares") registered in the name of LFG that the United States seized in connection with the above-captioned criminal proceeding and levied upon by the Internal Revenue Service to pay taxes allegedly owed by Sherman Mazur.  LFG seeks the return of the Shares on the grounds (i) the United States has no further need for the Shares because this criminal proceeding was dismissed on March 25, 2014, (ii) the Shares belong to LFG not Mazur and are not subject to lien or levy by the IRS, (iii) notice of the levy was improper, and (iv) collection of Mazur's taxes is time barred by the statute of limitations.

This Motion is based upon the attached memorandum of points and authorities, the Declarations of Ari Kaplan, Jason de Bretteville, Samuel Landis and Daniel J. Weintraub, the Statement of Undisputed Facts and the accompanying Request for Judicial Notice filed concurrently herewith, those matters of which this Court may take judicial notice, and such other and further evidence as may be presented by the parties and their counsel at the hearing on the motion.

Any party wishing to oppose the motion must file their written opposition no more than twenty one (21) days prior to the hearing on the motion.  Failure to file and serve a timely opposition may be deemed consent to the relief sought.

Dated: July 1, 2015                    WEINTRAUB & SELTH, APC

By: /s/ Elaine V. Nguyen
    Daniel J. Weintraub
    James R. Selth
    Elaine V. Nguyen
    Attorneys for Moving Party,
    LONDON FINANCE GROUP, LTD.

# TABLE OF CONTENTS

**Page**

Notice of Motion ........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.................................................3

I. INTRODUCTION ...................................................................................................3

II. BACKGROUND ....................................................................................................5

    A. The Criminal Case and Its Dismissal ..............................................................5

    B. Demand for the Return of the Shares After Dismissal of Criminal Charges................................6

    C. LFG's Bankruptcy ...........................................................................................7

III. DISMISSAL OF THE CRIMINAL CHARGES COMPELS RETURN OF THE SHARES TO LFG UNDER RULE 41(g)......................................................................................9

    A. Procedure For Return Of Seized Property Under Rule 41(g)......................................9

    B. LFG is Entitled to Return of the Shares.........................................................10

IV. THE LIEN FAILS AS LFG IS NOT MAZUR'S NOMINEE .........................................12

V. EVEN IF LFG WERE MAZUR'S NOMINEE, THE STATUTE OF LIMITATIONS BARS THE UNITED STATES TAX CLAIMS ...........................................................15

    A. Mazur's Tax Returns ......................................................................................16

    B. Mazur's Involuntary Bankruptcy....................................................................16

    C. Proceedings in Tax Court ...............................................................................18

    D. Taxes Assessed Against Mazur ......................................................................18

    E. Statute of Limitations Applicable to Mazur's Taxes .......................................19

    F. The Entry of The Lift Stay Order Ended Tolling of the Statue of Limitations on the Claim Against Mazur .................................................................................................21

    G. The Statue of Limitations on the Collection of the Claim Against Mazur Ran on August 10, 2012 ...................................................................................................23

VI. THE IRS FAILED TO GIVE LFG ADEQUATE NOTICE OF THE LEVY ................24

    A. Mailed Notice of Levy is Ineffective Under I.R.C. Section 6335 .............................24

    B. Service of the Notice of Levy on the FBI Does Not Pass Constitutional Muster.......................25

C. Even if the IRS had Given Notice of Levy to LFG, the Notice of the Denial of LFG's Administrative Claim Sets The Time to File a Wrongful Levy Suit.................................................26

VII. CONCLUSION.........................................................................................................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

Cases

*Bonacci v. United States*, 864 F. Supp. 1086, 1087 (D. Utah 1993) ............................................. 27

*Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007) ......................................................... 10

*Corley v. U.S.*, 556 U.S. 303, 314 (2009) ................................................................... 21

*Catalano v. Commissioner*, 279 F.3d 682, 686-87 (9th Cir. 2002) ................................................ 24

*Catalano v. Commissioner*, supra, 279 F.3d at 686-87 .......................................................... 25

*Drye v. United States*, 528 U.S. 49, 58 (1999) .......................................................................... 14

*Fourth Inv. LP v. U.S.*, 720 F.3d 1058, 1069 (9th Cir. 2013) ...................................................... 14

*G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) ............................................... 14

*Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir. 1991); *Reece v. Scoggins*, 506 F.2d 967, 971
    (5th Cir. 1975) ................................................................................................. 27

*Gust v. United States*, 789 F. Supp. 2d 58, 62 n.1 (D.D.C. 2011) .................................................. 17

*In re Five Boroughs Mortgage Co.*, 176 B.R. 708, 713 (Bankr. E.D.N.Y. 1995) ......................... 24

*In re Kornhauser*, 184 B.R. 425, 429 (Bankr. S.D.N.Y. 1995) ...................................................... 21

*In re Guildmaster, Inc.*, 2013 Bankr. LEXIS 1241 at *16-17 (Bankr. W.D. Mo. 2013) ................8

*In re London Finance Group, Ltd.*, Bankruptcy Case No.  2:15-bk-10097-BR ............................7

*In re Sherman Mazur*, Case No. 1:93-bk-16885-GM .................................................................. 18

*Moskal v. United States*, 498 U.S. 103, 108 (1990) ................................................................... 23

*Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) .............................. 29

*Peloro v. United States*, 488 F.3d 163, 177 (3d Cir. 2007) ......................................................... 10

*Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005) .................................................... 13

*Summary of California Law* §27 (9th Ed. 1994) ....................................................................... 14

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1209 (9th Cir. 1995) ............................... 25

*Taylor v. United States*, 483 F.3d 385, 389-90 (5th Cir. 2007) ................................................... 11

*Treasurer v. Commercial Coal Mining Co.*, 23 Cal. 390, 392 (1863) ............................................ 15

*United States v. Albinson*, 356 F.3d 278, 280 (3d Cir. 2004) ........................................................ 12

*United States v. Chambers*, 192 F.3d 374, 376-77 (3rd Cir. 1999) ............................................... 11

*United States v. Chambers*, 192 F.3d 374, 377-78 (3d Cir. 1999) .................................................. 10

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010) .......... 11

*United States v. Freedman,* 444 F.2d 1387, 1388 (9th Cir.) cert. denied, 404 U.S. 992 (1971)) .. 12

*United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008) .................................................... 10

*United States v. Janis*, 428 U.S. 433, 440-41 (1976) ...................................................................... 13

*United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) ................................................. 11

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) ............................................ 13

*United States v. Palmer*, 565 F.2d 1063, 1065 (9th Cir. 1977) ...................................................... 12

*United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987), cert. denied, 108 S. Ct. 773

    (1988) .......................................................................................................................................... 11

*United States v. Van Cauwvenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991). .............................. 11

*Webster's New Collegiate Dictionary* 1194 (1979) ........................................................................ 23

Statutes

11 U.S.C. § 362(a) ........................................................................................................................... 17

11 U.S.C. § 362(a)(1) and (6) .......................................................................................................... 16

11 U.S.C. § 501 ................................................................................................................................ 22

11 U.S.C. § 523 ................................................................................................................................ 22

11 U.S.C. § 541(a) ........................................................................................................................... 16

11 U.S.C. § 727 ................................................................................................................................ 22

18 U.S.C. § 3231 ................................................................................................................................ 8

26 U.S.C. § 6321 .............................................................................................................................. 11

26 U.S.C. § 6532(c)(1) ..................................................................................................................... 24

26 U.S.C. § 7426(c) .......................................................................................................................... 15

28 U.S.C. § 1355(a) ........................................................................................................................... 8

28 U.S.C. § 157(d) ............................................................................................................................. 9

28 U.S.C. § 2201 .............................................................................................................................. 15

28 U.S.C. § 2401(a); ........................................................................................ 10

Bankruptcy Code § 362 (c) ............................................................................. 20

Bankruptcy Code § 362(a) .............................................................................. 21

Bankruptcy Code § 362(c) .............................................................................. 17

Bankruptcy Code § 362(d) ........................................................................20, 21

Bankruptcy Code § 542(a) ...........................................................................7, 8

Bankruptcy Code § 542(a). ...........................................................................7

Internal Revenue Code§ 6335 ...................................................................4, 24, 25

Internal Revenue Code § 6335(a) ..............................................................4, 24, 25

Internal Revenue Code § 6502 ...............................................................19, 24

Internal Revenue Code § 6503(h) ............................................................... 19

Internal Revenue Code § 6532(c) .........................................................7, 23, 27

Internal Revenue Code § 7426 ................................................................... 24

## MEMORANDUM OF POINTS AND AUTHORITIES

True and correct copies of all exhibits referenced in this Motion are attached to the *Declarations of Ari Kaplan, Jason De Bretteville, Samuel Landis and Daniel J. Weintraub in Support of the Motion for Release of Property Seized Pursuant to Federal Rule of Criminal Procedure 41(g)* filed concurrently herewith.

## I.    INTRODUCTION

On January 29, 2013, the United States issued an indictment commencing the above-captioned criminal case ("Criminal Action"), [Docket No. 1]. It then arrested Defendants Ari Kaplan ("Kaplan"), Sherman Mazur ("Mazur") and seven others on February 13, 2013, on charges that included conspiracy, securities fraud, wire fraud and money laundering as well as two counts of forfeiture. [Docket Nos. 45 and 46] At that time, pursuant to a warrant issued on the basis of illegally obtained wiretaps, the Federal Bureau of Investigation ("FBI") raided the offices of Kaplan's company, London Finance Group, Ltd. ("LFG"), and seized the certificate for 1,436,988 restricted shares of Revolution Lighting Technologies, Inc. ("RVLT") registered in the name of LFG.[1]  LFG received the Shares for services rendered under a Consulting Agreement with Seesmart Technologies, Inc. ("Seesmart") and a Termination and Settlement Agreement (the "Seesmart Agreements") between these parties. *See* **Exhibit 3** (Bate No. 43); Kaplan Decl. ¶ 5. The United States subsequently released one-half of the Shares to Kaplan. Kaplan Decl. ¶ 6. By this motion, LFG seeks return of the remaining 718, 294 shares of RVLT (the "Shares").

Pending trial and shortly after his arrest, the Court released Kaplan on the condition, in part, that he remain confined by house arrest and wear a monitoring

---

[1]    Copy of the share certificate and the receipt for evidence seized are attached as **Exhibits 1 and 2** (Bates Nos. 20 and 23). Kaplan Decl. ¶ 4. All references to Exhibits refer to the Appendix of Exhibits filed concurrently with this Motion. All references to page numbers on the Exhibit refer to the "Bates" numbering in the lower right hand corner of the exhibit.

bracelet.  Because of the seizure of all or substantially all of LFG's computers, files and books and records and Kaplan's house arrest, LFG immediately ceased all operations at its offices in Westwood, California.  While Kaplan was under house arrest, the Internal Revenue Service ("IRS") attempted to levy on the Shares to secure and sell them to pay taxes which the IRS claims Mazur owes.  Even though Internal Revenue Code ("I.R.C.") § 6335(a), requires personal notice of levy to the owner of the property levied, the IRS only personally served notice of levy on the FBI, *and did not serve LFG or its President, Kaplan*.  The FBI and the IRS knew Kaplan's exact location at all times because he was under house arrest and subject to electronic monitoring.  On March 25, 2014, the United States requested that the Court dismiss the charges against Kaplan, Mazur and the other defendants [Docket No. 455] because the United States had based its search warrant and indictment on illegal wiretaps.  The Court dismissed the charges against all defendants on the same day [Docket No. 456].

On July 29, 2014, following the Court's dismissal of the indictment, Kaplan, in his capacity as President of LFG, demanded return of the Shares.  *See* **Exhibit 4** (Bates No. 70).  Notwithstanding this Court's dismissal of the criminal charges, the United States Attorney's Office ("USAO") failed to return the Shares.  The USAO instead reported that the certificate, which had been unlawfully seized as purported evidence in the dismissed criminal proceeding, had since been turned over to the IRS.  *See* **Exhibit 5** (Bates No. 74).

The United States retained the Shares taking the position that LFG is Mazur's "nominee."  Under this theory, the United States claims the Shares are impressed with a lien to secure payment of Mazur's taxes.  *See* **Exhibit 6** (Bates No. 79), Kaplan Decl. ¶ 8.  However, there has never been a determination by any Court that LFG is Mazur's "nominee" and as demonstrated below, this position is clearly incorrect and unsupportable.  LFG has a right to the return of the Shares

under Rule 41(g) because the criminal case has concluded.  Further, the United States cannot retain the Shares because LFG is not Mazur's nominee, because the IRS failed to give proper notice to LFG of its levy, and because the statute of limitations has run on the taxes that Mazur allegedly owes.  *See* Parts IV and V *below.*

## II.   **BACKGROUND**

### A.   THE CRIMINAL CASE AND ITS DISMISSAL

On or about February 13, 2013, the FBI seized the Shares at LFG's offices in Los Angeles, California in connection with the Criminal Action, pursuant to a search warrant issued on a probable cause showing derived from unlawfully obtained wiretaps.  At all times relevant, Kaplan was the President of LFG. Kaplan Decl., ¶3. On March 25, 2014, the United States moved to dismiss the charges against Kaplan, Mazur, and the other defendants because it had improperly obtained certain wiretap authorizations pertaining to Kaplan and Mazur.  On that same date, the District Court dismissed the Criminal Case [Docket Nos. 455 and 456].

### B.   DEMAND FOR THE RETURN OF THE SHARES AFTER DISMISSAL OF CRIMINAL CHARGES

On March 28, 2014, Kaplan's counsel wrote an e-mail to the USAO stating, in part:

> . . . I am helping Ari close down LFG and we need to arrange for the return of the property seized from the LFG offices so we can wrap things up.  Ari has had to cover certain LFG expenses out of his own pocket and the RVLT certificate is critical to satisfaction of LFG's outstanding obligations to Ari and other creditors.   Please let me know if there is any particular agent I should speak to regarding the logistics and whether you have any concerns about return of all the items seized

*See* **Exhibit 5** (Bates No. 74).  In the ensuing e-mail exchange, Kaplan's counsel repeatedly explained that he was seeking return of the Shares not on behalf

of Kaplan in his personal capacity, but on behalf of LFG.  For example, on April 8, 2014, after the USAO informed Kaplan's counsel of a purported "lien by the IRS" Kaplan's counsel stated:

> Whatever interest [Mazur] and/or other creditors may have in the certificate is subordinate to the interests of LFG, the entity that owns the stock.  Moreover, I do not understand the IRS to have any rights to possession of LFG property, much less property seized pursuant to a search warrant obtained on the basis of the wiretaps.   Accordingly Ari is requesting immediate return of the certificate to him, in his capacity as an officer of LFG.

> …

> Yes Jim, I am generally aware (either from you or Marc Harris) that the IRS has substantial tax claims against [Mazur] and that the IRS might (or apparently has) made some attempt to secure a lien against Sherman's interest in the RVLT certificate.  I have not seen any sort of order or other document indicating that any such right has been perfected, and I have hard time understanding how any such lien pertains to LFG's right to possession of the certificate.  Indeed, it strikes me as odd that the IRS has possession of a document seized as evidence in this case, particularly in light of recent events.  In any event, I hope we can agree that it needs to be returned now.   Please let me know whether you can arrange for its return this week.

*See* **Exhibit 5** (Bates No. 74).

Then, on April 14, 2014, the USAO disclosed that it had turned over physical possession of evidence seized in the criminal proceeding, namely the Shares, to the IRS, and directed Kaplan's counsel to the IRS:

> Regarding the RVLT stock certificate, the certificate is not in our possession.  You need to contact the IRS if you believe that it should be returned.

*Id.*

On July 9, 2014, the United States advised LFG that it was selling the Shares pursuant to a Notice of Federal Tax Lien allegedly issued on June 24, 2013 on the assets of Mazur for his unpaid personal income taxes on the ground that LFG was the "nominee" of Mazur.  *See* **Exhibit 6** (Bates No. 87).  In response, Mazur's counsel provided the IRS on July 24, 2014 with a detailed analysis establishing that the statute of limitations on collection of the Mazur taxes has expired.  *See* **Exhibit 7** (Bates No. 89).  Then, on July 29, 2014, Kaplan, in his capacity as President of LFG, had his counsel make demand upon the IRS for return of the Shares.  *See* **Exhibit 4** (Bates No. 70).  On November 20, 2014, the IRS sent its response indicating that the IRS had considered and denied LFG's administrative claim for return of the Shares on the grounds that the IRS determined the Shares belonged to Mazur.  The letter advised that LFG had the right to contest the administrative action in District Court and that the time to commence such a challenge was governed by I.R.C. § 6532(c).  *See* **Exhibit 8** (Bates No. 96).[2]  The IRS refused to return the Shares and scheduled an execution sale for January 6, 2015.  *See* **Exhibit 9** (Bates No. 104).

C.     LFG'S BANKRUPTCY

Unable to stop the sale and to preserve the value of the Shares wrongfully detained by the United States, LFG filed a petition for relief under chapter 11 of the Bankruptcy Code [3] in this District on January 5, 2015.  *In re London Finance Group, Ltd.*, Bankruptcy Case No.  2:15-bk-10097-BR.  On January 5, 2015, LFG made yet another demand upon the United States to turnover the Shares pursuant to Bankruptcy Code § 542(a).  *See* **Exhibit 10** (Bates No. 112).  The United States ignored this request.

---

[2]  I.R.C. § 6532 required LFG to bring suit within six (6) months after the mailing of the denial of its administrative claim, i.e., May 20, 2015.

[3]  All references to the "Bankruptcy Code" refer to Title 11 of the United States Code §§ 101 *et seq.*

As a result, on February 3, 2015, and well within the time required by I.R.C. § 6532(c), LFG filed a Complaint against the United States in the Bankruptcy Court for this District styled: *London Finance Group, Ltd. Internal Revenue Service, et al.*, Adversary No. 2:15-ap-01070-BR (the "Adversary Proceeding") seeking (i) turnover of the Shares pursuant to Bankruptcy Code § 542(a); (ii) declaratory relief that LFG is not the nominee of Mazur and the tax claims against Mazur are barred by the statute of limitations, and (iii) compensation for the wrongful levy upon the Shares.[4]  As of this date, the United States has yet to turn over the Shares.

The United States filed a motion to dismiss (the "Dismissal Motion")[5] the Complaint alleging (i) the Declaratory Relief Act bars making a declaration of Mazur's tax liability; (ii) the statute of limitations on collection of Mazur's taxes has not run; (iii) LFG's wrongful levy claim is barred by the statute of limitations; and (iv) if wrongful levy is barred by the statute of limitations, then LFG has no right of turnover under Bankruptcy Code § 542(a).

In response to the Dismissal Motion, LFG elected to amend the Complaint to allege a claim under Rule 41(g).  In so doing, LFG realized the Bankruptcy Court most likely does not have jurisdiction over such a claim.  *In re Guildmaster, Inc.*, 2013 Bankr. LEXIS 1241 at *16-17 (Bankr. W.D. Mo. 2013) ("federal district courts have exclusive jurisdiction over criminal cases, including criminal forfeitures, under 18 U.S.C. § 3231 and over federal forfeiture cases under 28

---

[4]  A copy of the Complaint in the Adversary Proceeding ("Complaint") is attached without exhibits as **Exhibit 11** (Bates No. 118).

[5]  A copy of the United States' Notice of Motion and United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim; Memorandum of Points and Authorities and Declaration of Farrell Stevens in Support Motion (the "Motion") in the Adversary Proceeding is attached as **Exhibit 12** (Bates No. 133).

U.S.C. § 1355(a).  Further, property taken or detained for forfeiture is subject only to the orders of the court having jurisdiction.  Even when bankruptcy cases are referred by the district court to the bankruptcy court, such referral relates only to proceedings arising under, arising in, or related to Title 11. Clearly, this Court lacks jurisdiction ***over any aspect of the criminal matter."***) (footnotes omitted) (emphasis added).  LFG's counsel requested the United States stipulate to allow LFG to amend its Complaint and that the parties agree to withdraw the reference to allow the District Court to rule.  The United States refused to stipulate to allow the amendment on the grounds that such an amendment was "futile" or to withdrawal of the reference.  *See* **Exhibit 13** (Bates No. 161).  Hence, LFG filed the instant motion and has simultaneously filed a motion to withdraw the reference of the Adversary Proceeding to this Court pursuant to 28 U.S.C. § 157(d).[6]

## III.   DISMISSAL OF THE CRIMINAL CHARGES COMPELS RETURN OF THE SHARES TO LFG UNDER RULE 41(g).

A.   PROCEDURE FOR RETURN OF SEIZED PROPERTY UNDER RULE 41(g)

Rule 41(g) of the Federal Rules of Criminal Procedure provides the standards and procedure for seeking return of seized property:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings. (Emphasis added.)

If a party files a motion for return of property under Rule 41(g), the Court will receive evidence on issues of fact necessary to dispose of the motion, including any issues regarding whether the government retains possession of the property and

---

[6]   LFG shall also file a Motion for Leave to Amend the Complaint.

what happened to the property if the government no longer retains possession. *Albinson*, 356 F.3d at 281, citing *United States v. Chambers*, 192 F.3d 374, 377-78 (3d Cir. 1999). The Court has jurisdiction over this motion under its general equitable powers. *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008). A court, however, must receive evidence only if needed to determine a disputed issue of fact. *Peloro v. United States*, 488 F.3d 163, 177 (3d Cir. 2007). Affidavits or documentary evidence, such as chain of custody records, may be sufficient to support a finding by the court. *Albinson*, 356 F.3d at 281.

After criminal proceedings conclude, courts treat a motion filed under Rule 41(g) as a civil complaint. *Ibrahim*, 522 F.3d at 1007. The statute of limitations is six years. 28 U.S.C. § 2401(a); *Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007). The limitations period begins to run upon entry of the criminal judgment.[7] Generally, the Court should decide the 41(g) motion on the pleadings. If the Court cannot do that, it may go outside the pleadings and treat the motion as one for summary judgment. If it cannot decide the motion on that basis, the Court would then proceed to trial under the Federal Rules of Civil Procedure. *See Ibrahim*, 522 F.3d at 1008; *Taylor v. United States*, 483 F.3d 385, 389-90 (5th Cir. 2007).

### B.   LFG IS ENTITLED TO RETURN OF THE SHARES

The conclusion of criminal proceedings burdens the United States to demonstrate it has a legitimate reason to retain the seized property. *Id*.; *United States v. Van Cauwvenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991). Once criminal proceedings conclude, the law presumes that the government will return the seized property to the person from whom it took the property unless it is contraband or subject to forfeiture. *United States v. Chambers*, 192 F.3d 374, 376-77 (3rd Cir. 1999). Indeed, when the United States has seized property illegally as was the case

---

[7]   Here, that date is March 25, 2014 when the Court dismissed the charges. [Docket No, 456].

1  here through intentional wrong doing, it should return the property forthwith.

2  *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1174 (9th Cir.

3  2010).

4        To prevail, LFG must show that: (1) it is entitled to lawful possession of the

5  seized property; (2) the Shares are not contraband; and (3) the United States no

6  longer needs the Shares as evidence.  *United States v. Van Cauwenberghe*, 827 F.2d

7  424, 433 (9th Cir. 1987), cert. denied, 108 S. Ct. 773 (1988).  LFG bears the initial

8  burden to establish its entitlement to the Shares.  *United States v. Martinson*, 809

9  F.2d 1364, 1369 (9th Cir. 1987).  Once criminal proceedings conclude, the United

10  States may only retain the seized Shares if they are contraband, subject to forfeiture,

11  or an outstanding lien.  *United States v. Albinson*, 356 F.3d 278, 280 (3d Cir. 2004).

12        Here, LFG can make the *prima facie* showing that it is entitled to return of the

13  Shares.  First, the Shares are registered in its name.  **Exhibit 1** (Bates No. 20).

14  Second, the Shares are certainly not contraband.

15        Thus, to retain the Shares, the United States must show it has a legitimate

16  interest in them.  *United States v. Palmer*, 565 F.2d 1063, 1065 (9th Cir. 1977).  A

17  tax lien is a sufficient interest (*United States v. Freedman,* 444 F.2d 1387, 1388

18  (9th Cir.) cert. denied, 404 U.S. 992 (1971)), however, such lien only extends to

19  property belonging to the taxpayer.  26 U.S.C. § 6321.  Here, there is no dispute

20  that the Shares were issued to LFG in consideration of professional services

21  rendered by LFG to Seesmart.  The only basis for the IRS assertion that the lien

22  attaches to LFG's Shares is that LFG is the "nominee" of Mazur.  There is no other

23  basis for the lien.  *See* **Exhibit 6** (Bates No. 79).  As demonstrated below, LFG is

24  not Mazur's nominee.[8]

25

26

27  _____

[8]        Moreover, as explained below in Section V, the statute of limitations has run on the
28  collection of the taxes from Mazur.

**IV.   THE LIEN FAILS AS LFG IS NOT MAZUR'S NOMINEE.**

Well-established standards determine if a third party, such as LFG, holds property as a "nominee" of a taxpayer (Mazur).  These standards are:

a)   whether inadequate or no consideration was paid by LFG for the Shares;

b)   whether the Shares were placed in LFG's name in anticipation of a lawsuit or other liability while Mazur remained in control of them;

c)   whether there is a close relationship between LFG and Mazur

d)   whether LFG and Mazur failed to record the transfer of the Shares;

e)   whether Mazur retained possession; and

f)   whether Mazur continued to enjoy the benefits of the Shares.

*Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).  The burden of proof to show that LFG is the "nominee" of Mazur rests upon the United States.  *United States v. Janis*, 428 U.S. 433, 440-41 (1976) (the United States must show "the taxpayer (Mazur) has an interest in the property that the lien seeks to foreclose.")

A federal tax lien does not arise or attach to property in which a person has no interest under state law.  *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) ("In application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.").  If state law determines that a property interest exists, federal law dictates the tax consequences.  *Id*. at 722; *Drye v. United States*, 528 U.S. 49, 58 (1999) ("[One] look[s] to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether

the taxpayer's state-delineated rights qualify as property or rights to property within the compass of federal tax lien legislation."). A taxpayer's property rights may therefore include property held by a third party as a nominee or alter ego of that taxpayer under state law. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977). The Ninth Circuit employs the Federal standards in *Spotts* to apply the nominee doctrine under California law. *Fourth Inv. LP v. U.S.*, 720 F.3d 1058, 1069 (9th Cir. 2013).

The Seesmart Agreements (S*ee* **Exhibit 3** (Bates No. 43)) signed by Kaplan, as President of LFG, show that LFG, and not Mazur, owns the Shares. In correspondence with the United states, LFG acknowledged the possibility that it **might** have some duty to compensate Mazur in an amount to be determined for services in connection with Seesmart Agreements based either on a transfer of the Shares or their value. *See* Exhibits "4" and "5" (Bates Nos. 70 and 74). LFG has always maintained that it alone owns the Shares.

California law establishes that Mazur has no direct interest in the Shares by virtue of any rights or claims he may have against LFG. Because the Shares trade on NASDAQ,[9] Mazur could not compel LFG to transfer the Shares to him. 11 Witkin, *Summary of California Law* §27 (9th Ed. 1994) ("agreement to transfer personal property will not justify specific performance, except in case of unique chattels such as heirlooms, or shares of stock not obtainable in the open market."); *Treasurer v. Commercial Coal Mining Co.*, 23 Cal. 390, 392 (1863) (specific performance is not an available remedy to public stocks commonly bought and sold in the open market). Mazur therefore has never had a specific interest in the Shares. Indeed, Mazur asserts no interest in the Shares or any claim to them arising out of LFG's receipt of the Shares under the Seesmart Agreements. *See* **Exhibit 14** (Bates

---

[9] See the legend placed by the IRS on the Notice of Federal Lien attached as **Exhibit 6** (Bates No. 87).

No. 166).

Applying the six *Spotts* standards to LFG's interest in the Shares, only factor (c) remotely applies.

a) WHETHER INADEQUATE OR NO CONSIDERATION WAS PROVIDED BY LFG FOR THE SHARES

b) LFG obtained the Shares through a transfer from Seesmart in satisfaction of professional services rendered to Seesmart under the Consulting Agreement and subsequent settlement among LFG and Seesmart.[10] **Exhibit 3** (Bates No. 43) (the Seesmart Agreements"). LFG performed such services over a period of more than eighteen (18) months. Kaplan Decl. ¶ 12.

c) WHETHER THE SHARES WERE PLACED IN LFG'S NAME IN ANTICIPATION OF A LAWSUIT OR OTHER LIABILITY WHILE MAZUR REMAINED IN CONTROL OF THEM

Seesmart transferred the Shares to LFG to compensate LFG for many months of professional services performed under the Consulting Agreement among the parties. Kaplan Decl. ¶ 13. Compensation for professional services rendered by LFG was at all times paid to LFG, not Kaplan or Mazur. Kaplan Decl. ¶ 14. The Seesmart Agreements never contemplated issuing the Shares or paying any other compensation directly to Mazur.

d) WHETHER THERE IS A CLOSE RELATIONSHIP BETWEEN LFG AND MAZUR

A "close" relationship exists between Mazur and LFG's president, Kaplan, because Kaplan is Mazur's nephew.

---

[10]     Kaplan Decl. at ¶ 4.

e)    WHETHER LFG AND MAZUR FAILED TO RECORD THE TRANSFER
      THE SHARES

      The transfer of the Shares was from Seesmart to LFG and was
      properly recorded by the transfer agent for Revolution Lighting.
      *See* **Exhibit 15** (Bates No. 172).

f)    WHETHER MAZUR RETAINED POSSESSION

      Mazur never possessed or had any control of the Shares before
      or after Seesmart transferred them to LFG, nor did he render
      and meaningful services to LFG in connection with its
      engagement by Seesmart.  Kaplan Decl. ¶ 5.

g)    WHETHER MAZUR CONTINUED TO ENJOY THE BENEFITS OF THE
      SHARES

      Mazur never enjoyed any of the benefits of the Shares'
      ownership.  He has no indicia of control such as a proxy right to
      vote the Shares, thus he did not secretly "retain" them.  LFG
      retained all rights in and to the Shares at all times.  Kaplan
      Decl. ¶ 5.

In view of the foregoing, there is no triable issue of fact that LFG was ever
Mazur's nominee with respect to the Shares.

**V.    EVEN IF LFG WERE MAZUR'S NOMINEE, THE STATUTE OF
LIMITATIONS BARS THE UNITED STATES TAX CLAIMS.**

In its Motion to Dismiss, the United States claims that LFG may not
challenge the ***assessment*** of Mazur's tax liability under 26 U.S.C. § 7426(c) or the
Declaratory Relief Act, 28 U.S.C. § 2201.  **Exhibit 12** (Bates No. 133).  LFG does
not challenge the "assessment" of Mazur's tax liability, but rather the United States'
right to "collect" that assessed tax.  "The difference between tax collection and tax
assessment may not be readily apparent, courts define assessment as 'a mere

determination of tax liability which must precede any collection action by the IRS." *Gust v. United States*, 789 F. Supp. 2d 58, 62 n.1 (D.D.C. 2011).  Conversely, a claim for improper collection practices arises from the failure of the United States to follow the prescribed methods of acquiring assets.  *Dockery v. U.S. Dep't of Treasury*, 593 F. Supp. 2d 258, 260 (D.D.C. 2009).  LFG does not challenge the "assessment" of the tax against Mazur, *i.e.*, it does not challenge the "mere determination of [his] tax liability."  Here, LFG challenges whether the United States has properly liened or levied upon the Shares to collect on its claim against Mazur.  As shown, there is no triable issue of fact that the time for the United States to do that has passed by operation of law.

### A.   MAZUR'S TAX RETURNS

Over 99% of the tax claims that undergird the detention of the Shares arise out of Mazur's liability under six (6) tax returns, including extensions filed by him and his then wife (Michelle) for tax years ending December 31, 1982 through December 31, 1987.[11]  For ease of reference, the tax year ending on December 31, 1982 is referred to as "TY82."  Other tax years use the same abbreviation.

### B.   MAZUR'S INVOLUNTARY BANKRUPTCY

Creditors filed an involuntary bankruptcy petition against Mazur on March 1, 1993 in the Bankruptcy Court, *In re Sherman Mazur*, Case No. 1:93-bk-16885-GM.  The docket in the Mazur bankruptcy is referred to as the "Mazur Docket".  The relevant portions of the Mazur Docket are attached as **Exhibit 18** (Bates No.

---

[11]    The Government also asserts claims against Mazur for five other tax years:  TY91 (assessed November 30, 1992) in the amount of $14,709.16; TY02 (assessed January 10, 2005) in the amount of $32,248.14; TY03 (assessed on February 19, 2007) in the amount of $48,465.79; TY04 (assessed on February 12, 2007) in the amount of $29,512.52; and TY05 (assessed on September 24, 2007) in the amount of $14,497.98.  *See* **Exhibit 6** (Bates No. 87).  Movant is informed and believes that the IRS seized cash assets from Mazur or an entity known as RTO Solutions, LLC, in excess of $200,000.00, which was more than enough to satisfy the taxes asserted for tax years 2002 through 2005.  Evidence of such seizure will be provided prior to the hearing on this Motion.

186).  On May 3, 1994, the Bankruptcy Court entered an order for relief in Mazur's case.

The filing of a voluntary or involuntary bankruptcy petition against Mazur stayed assessment of his liability for taxes.  11 U.S.C. § 362(a)(1) and (6).  Hence, until lifted by operation of law or court order, the automatic stay barred the United States from assessing Mazur's taxes.  The entry of an order for relief in Mazur's bankruptcy case created an estate in all of Mazur's assets as of the date of the involuntary petition.  11 U.S.C. § 541(a).  The automatic stay in effect at that time barred any attempt by the IRS to assess or collect any taxes from the assets of Mazur's bankruptcy estate or from Mazur individually.  11 U.S.C. § 362(a)(1) and (6), respectively.

On June 24, 1998, the United States and Duke Salisbury, the chapter 7 trustee of Mazur's bankruptcy estate (the "Mazur Trustee"), entered into a stipulation with the United States entitled "Stipulation Between the United States of America and Chapter 7 Trustee to Pursue Pending Actions in Tax Court" (the "Stipulation").  [Mazur Docket No. 122]  *See* **Exhibit 16** (Bates No. 178).

Paragraph 3 of the Stipulation provides:

> The parties stipulate that any attachment of funds and/or property of the debtor[s] [Mazur and Michelle] by the Internal Revenue Service pursuant to relief from the automatic stay shall not preclude nor restrict the Trustee from claiming said funds as an asset of the respective bankruptcy estates [of Mazur or Michelle] and , in the event an issues arises, the parties stipulate that the United States Bankruptcy Court shall be the forum in which the ownership of such funds and/or property shall be determined.

*See* **Exhibit 16** (Bates No. 178).

On August 31, 1998, the Bankruptcy Court entered an order granting relief from stay to the IRS (the "Lift Stay Order") [Mazur Docket No. 122].  *See* **Exhibit

**17** (Bates No. 186).  The United States drafted and filed the Lift Stay Order on a form approved by the Bankruptcy Court.  The Lift Stay Order specifically provides:

> As to Movant (*i.e.*, the United States), its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is … ***Terminated as to [Mazur] and [Mazur]'s estate***.  (Emphasis added).

*See* **Exhibit 17** (Bates No. 186).

On April 12, 2006, the Bankruptcy Court entered an order granting a discharge to Mazur (the "Discharge Order") [Mazur Doket No. 129] thereby terminating the automatic stay as to all creditors having claims against Mazur under Bankruptcy Code § 362(c).  *See* **Exhibit 18** (Bates No. 186).  The termination of the stay pursuant to the Discharge Order is in addition to the Lift Stay Order.  The Discharge Order makes no reference to the Lift Stay Order and therefore does not change or affect that order's prior termination of the automatic stay for the benefit of the Government that was effective on August 31, 1998.  Thus, from and after that date, the automatic stay did not prohibit the Government from assessing or collecting any tax Mazur owed.

C.    PROCEEDINGS IN TAX COURT

Form on March 17, 1988 through December 14, 1990, Mazur and Michelle filed six petitions in the Tax Court challenging the Government's claims for taxes for TY82 through TY87.  **Exhibit 11** (Bates No. 118) at ¶ 42.  After obtaining relief from stay under the Lift Stay Order, the United States recommenced the litigation against Mazur and Michelle in the Tax Court to assess Mazur and Michelle's taxes for TY82 through TY87, inclusive.  *Id*. at pp. 41.

The Government, Mazur and Michelle entered into six stipulated judgments assessing their tax liability to the United States for the TY82 through TY87.  Pursuant to the Notice of Federal Tax Lien (**Exhibit 6** (Bates No. 79)) filed on July

9, 2013 with Los Angeles County Recorder's office, the United States assessed

Mazur's taxes for TY82 through TY87 on the following dates:

| TY82 | June 10, 2002 |
|------|---------------|
| TY83 | July 8, 2002 |
| TY84 | August 10, 2002 |
| TY85 | July 8, 2002 |
| TY86 | July 8, 2002 |
| TY87 | May 24, 2002 |

D.    TAXES ASSESSED AGAINST MAZUR

Pursuant to the Notice of Federal Tax Lien (**Exhibit 6** (Bates No. 79)), the

United States claims the following taxes to be due from Mazur on or about July 9,

2013 attached as

|      | Assessment Date | Amount |
|------|-----------------|--------|
| TY82 | June 10, 2002 | $3,096,726.25 |
| TY83 | July 8, 2002 | $6,438,722.32 |
| TY84 | August 10, 2002 | $5,945,388.34 |
| TY85 | July 8, 2002 | $8,932,388.34 |
| TY86 | July 8, 2002 | $14,553,097.42 |
| TY87 | May 24, 2002 | $13,235,993.31 |
| TY91 | November 30, 1992 | $14,709.16 |
| TY02 | January 10, 2005 | $38,248.14 |
| TY03 | February 19, 2007 | $48,465.97 |
| TY04 | February 12, 2007 | $29,512.52 |
| TY05 | September 24, 2007 | $14,497.98 |
|      |                 | $52,347,749.75 |

E.    STATUTE OF LIMITATIONS APPLICABLE TO MAZUR'S TAXES.

Internal Revenue Code § 6502 specifies the statute of limitations on

collection after assessment.  It provides in pertinent part:

Collection after assessment.

(a)    Length of period. Where the assessment of any tax imposed by
       this title has been made within the period of limitation properly
       applicable thereto, such tax may be collected by levy or by a
       proceeding in court, but only if the levy is made or the
       proceeding begun--

(1) within 10 years after the assessment of the tax, or ….

If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

Internal Revenue Code § 6503(h) tolls the limitation for when a pending bankruptcy proceeding prevents assessing or collecting taxes.  That section provides as follows:

(h)    The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code be suspended for the period during which the Secretary is prohibited by reason of such [bankruptcy] case from making the assessment or from collecting and --

(1) for assessment, for 60 days thereafter, and

(2) for collection, 6 months thereafter.

The automatic stay can end by either operation of law upon the entry of discharge or by order of the court.  Bankruptcy Code § 362 (c) (operation of law) or § 362(d) (order).

By virtue of the Lift Stay Order (**Exhibit 17** (Bates No. 186)) entered on August 31, 1998, the pendency of Mazur's bankruptcy case no longer prohibited the United States from assessing or collecting any tax against Mazur, his bankruptcy estate or his assets because the Lift Stay Order by its very terms "***terminated*"** the automatic stay as against both Mazur and his bankruptcy estate. Thus, the statute of limitations on the United States' collection of taxes from Mazur began to run on the *later* of

a)    March 2, 1999 (six months after the entry of the Lift Stay Order) or

b)    the date that the Tax Court assessed those taxes because the

1   pendency of Mazur's bankruptcy case no longer prohibited

2   assessment or collection of taxes owed by Mazur after August

3   31, 1998.

4   F.   THE ENTRY OF THE LIFT STAY ORDER ENDED TOLLING OF THE

5   STATUTE OF LIMITATIONS ON THE CLAIM AGAINST MAZUR

6   The Lift Stay Order says the automatic stay is ***"terminated"*** as to both

7   Mazur, Michelle and their estates without restriction.  The Bankruptcy Code does

8   not define "terminate."  The dictionary defines it as "to bring to an end."

9   *Webster's New Collegiate Dictionary* 1194 (1979).  Words in statutes, orders and

10  agreements have their plain common sense meaning unless context dictates another

11  meaning or the meaning would lead to an absurd result.  See *Moskal v. United*

12  *States*, 498 U.S. 103, 108 (1990).  Thus, the Court should use the common sense

13  definition of the word "terminate" in the Lift Stay Order to interpret it.

14  Bankruptcy Code § 362(d) allows a court to enter an order "terminating,

15  annulling, modifying or conditioning" the automatic stay.  Each term has its own

16  unique meaning.  *Corley v. U.S.*, 556 U.S. 303, 314 (2009) (courts interpret each

17  term in a statute as distinct so none becomes superfluous.)  "Terminating" the

18  automatic stay is distinct from "annulling," which means retroactive relief from

19  stay.  *In re Kornhauser*, 184 B.R. 425, 429 (Bankr. S.D.N.Y. 1995).  Likewise,

20  "terminating" is distinct from "modifying" the stay, which means the stay remains

21  partially in effect, for example allowing a mortgagee to start foreclosure

22  proceedings but not proceed to sale.  Similarly, "conditioning" means the stay

23  remains in effect until the happening of some condition.  3 *Collier on Bankruptcy*,

24  ¶ 362.07[1] (16th ed. 2013).  Thus, absent anything else in the Lift Stay Order to

25  the contrary, the use of the term "terminate" in the lift stay order can only mean

26  that the automatic stay under Bankruptcy Code § 362(a) ended finally and forever

27  for the United States on August 31, 1998.

28

Paragraph 7 of the Lift Stay Order states: "Tax Court will determine the amount of IRS claim, but Bankruptcy Court will determine priority." **Exhibit 17** (Bates No. 186). This language does not restrict the termination provisions in paragraph 4 of that order.  Granting relief from stay affects neither the claim administration process to determine the relative amount and priority of claims nor whether the property subject to lien of the party obtaining relief remains property of the bankruptcy estate.  *In re Five Boroughs Mortgage Co.*, 176 B.R. 708, 713 (Bankr. E.D.N.Y. 1995) (claims administration); *Catalano v. Commissioner*, 279 F.3d 682, 686-87 (9th Cir. 2002) ("Although the property may pass from the control of the estate [as a result of lifting the stay], that does not mean that the estate's interest in the property is extinguished.")

Paragraph 6 of the Lift Stay Order provides various common means of modifying or conditioning relief from the automatic stay:

"Limitations on Enforcement of Judgment: Movant is permitted to enforce its final judgment by (specify all that apply):

    a.   Collecting upon any available insurance in accordance with applicable non-bankruptcy law;

    b.   Filing a Proof of Claim in this bankruptcy case pursuant to 11 U.S.C. § 501;

    c.   Proceeding against the Debtor(s) as to non-estate property or earnings; and/or

    d.   Timely bringing an 11 U.S.C. § 523 and/or § 727 action."

These terms are not applicable at all because the IRS, which drafted the order, did not check them.  This is logical, because the Lift Stay Order "terminated" the stay, it did not merely "modify" it.  Thus, the Lift Stay Order allowed the IRS to proceed to *collect* any tax against Mazur's property.  If the United States' affirmative failure to select paragraph 6(c) creates an ambiguity

about termination, Paragraph 3 of the Stipulation (**Exhibit 16** (Bates No. 178)) removes that ambiguity:

> The parties stipulate that ***any attachment of funds and/or property of the debtor [Mazur] by the Internal Revenue Service pursuant to relief from the automatic stay*** shall not preclude nor restrict the Trustee from claiming said funds as an asset of the respective bankruptcy estates and, in the event such an issue arises, the parties stipulate that the United States Bankruptcy Court shall be the forum in which the ownership of such funds and/or property shall be determined.  (Emphasis added.)

The phrase "attachment of funds and/or property of the debtor by the Internal Revenue Service" implies the IRS could thereafter immediately commence collection against Mazur's assets.  The parties left open whether those assets were the property of the Mazur's bankruptcy estate or Mazur.  If the former, they would be subject to the priorities of the Bankruptcy Code.  If the later, they would be property of the Mazur free and clear of the claims of his bankruptcy estate, but not the United States.  This reservation is consistent with the widely held distinction between allowing a creditor to foreclose on collateral after lifting the automatic stay and whether that collateral remains part of the bankruptcy estate.  *Catalano v. Commissioner*, supra, 279 F.3d at 686-87.

G.    THE STATUTE OF LIMITATIONS ON THE COLLECTION OF THE CLAIM AGAINST MAZUR RAN ON AUGUST 10, 2012

Pursuant to the Notice of Federal Tax Lien (**Exhibit 6** (Bates No. 79)), the IRS assessed the taxes for TY82 through TY87 on the following dates:

| TY82 | June 10, 2002 |
| TY83 | July 8, 2002 |
| TY84 | August 10, 2002 |
| TY85 | July 8, 2002 |
| TY86 | July 8, 2002 |
| TY87 | May 24, 2002 |

Given that the last assessment date of August 10, 2002, the time for the United States to collect on any of Mazur's taxes for TY82-TY87 ended on August 10, 2012, at the latest.  We are now almost three years past that date.  The United States has no right to collect that tax.

## VI.    THE IRS FAILED TO GIVE LFG ADEQUATE NOTICE OF THE LEVY.

In its Motion to Dismiss (**Exhibit 12** (Bates No. 133)), the United States claims it complied with the requirements to give notice of the seizure of the Shares by personally serving the notice of levy on the FBI.  As such, the government claims the Adversary Complaint was not timely filed under I.R.C. § 6532(c).  That argument fails on three grounds.

A.    MAILED NOTICE OF LEVY IS INEFFECTIVE UNDER I.R.C. § 6335

I.R.C. § 7426 permits the non-taxpayer, such as LFG, whose property has been wrongfully levied upon to bring civil suit against the United States.  The statute of limitations for claims brought under section 7426 is nine (9) months from the date of levy.[12]  26 U.S.C. § 6532(c)(1).  I.R.C. § 6502 defines that date as "the date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given" to the owner of the personal property, *i.e.*, the Shares.  In turn, I.R.C. § 6335(a) requires:

> As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property, (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made.  If the owner cannot readily be located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address.  Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property

---

[12]    Or as noted above, six months after the IRS denies an administrative claim for the return of the levied property.

- 24 -

seized, and, in the case of real property, a description with reasonable certainty of the property seized.

If the IRS failed to give proper notice under section 6335(a), there has not yet been a "date of levy" within the meaning of section 6532(c) and the nine-month statutory clock has not yet started to run. *Bonacci v. United States*, 864 F. Supp. 1086, 1087 (D. Utah 1993). "[T]he extraordinary powers granted to the government of levying, seizing and selling property for tax collection purposes without prior judicial hearing are dependent upon strict compliance with the procedures prescribed by statute, … ." *Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir. 1991); *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975). Thus, Section 6335(a) "requires the government to have personally served a written notice to [LFG] or to have left the written notice at [LFG's] usual place of abode." *Goodwin*, supra, 935 F.2d at 1064. First class mail is not personal service. Further, "because section 6335(a) and (b) requires strict compliance," the property owner [LFG] need not prove prejudice. *Id.* at 1065. Thus, the service upon LFG by any method other than personal service falls short of the requirements of I.R.C. § 6335. The IRS did not personally serve either LFG or Kaplan in his capacity as President of LFG

B.  <u>Service of the Notice of Levy on the FBI Does Not Pass Constitutional Muster</u>

With logic that can only be called "Orwellian," the United States claims the suit for wrongful levy is time barred because the IRS complied with the requirements of I.R.C. § 6335(a) by personally serving the notice of levy on the FBI who had seized them from Debtor under the Search Warrant. *See* **Exhibit 12** (Bates No. 133). Even if such "notice" technically complies with I.R.C. § 6335(a), it does not come close to the constitutional requirements of due process. See, e.g., *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1209 (9th Cir. 1995) ("[L]evying on the property of a third-party in order to satisfy a delinquent

taxpayer's obligations -- without notifying either the delinquent taxpayer or the third party of the levy-raises serious constitutional questions.") The Supreme Court has framed the minimum constitutional notice requirements as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. ***The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.*** But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.
>
> [Thus], the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. ***The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected***, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) (citations and quotations omitted) (emphasis added).

The United States does not even try to explain how giving notice to itself (the FBI) meets the most basic requirements of due process, *i.e.*, a reasonable time to make an appearance and making sure the party affected [LFG] is in fact informed. If the notice given the FBI is effective, as opposed to LFG, how can LFG possibly either know of the United States' claims against the Shares or take timely steps to protect its interest? To pose the question is to answer it!

C.   EVEN IF THE IRS HAD GIVEN NOTICE OF LEVY TO LFG, THE NOTICE OF THE DENIAL OF LFG'S ADMINISTRATIVE CLAIM (**EXHIBIT 8** (BATES NO. 196)) SETS THE TIME TO FILE A WRONGFUL LEVY SUIT

The November 20, 2014, letter from the IRS to LFG's counsel plainly contradicts the argument that LFG received the notice of levy in July, 2013 as alleged in the Motion.  *See* **Exhibit 8** (Bates No. 196).  That letter plainly states that the IRS completed its administrative review of LFG's request for the return of the Shares on or about November 20, 2014, presumably based on LFG's July 29, 2014, demand for the return of the Shares (**Exhibit 4** (Bates No. 70).[13]  In that letter, the IRS gave LFG notice that it had the time set forth in I.R.C. § 6532(c) (six months) to bring an action to overturn that decision.  Thus, the last date to bring such an action was May 20, 2015.  The Adversary Proceeding was commenced on February 5, 2015 and is timely.  *See* **Exhibit 11** (Bates No. 118).

**VII.   CONCLUSION**

For the reasons set forth above, the United States has no further need for the Shares and no valid lien upon them.  The Court should order the United States to turn the Shares over to LFG.

Dated: July 1, 2015                         WEINTRAUB & SELTH, APC

                                By: /s/ Elaine v. Nguyen
                                Daniel J. Weintraub
                                James R. Selth
                                Elaine V. Nguyen
                                Attorneys for Moving Party,
                                LONDON FINANCE GROUP, LTD.

---

[13]  If there was a defect in that notice, the IRS had thirty days to advise LFG about it.  If there is no such objection, then the notice is deemed effective.  26 C.F.R. 301.6343-2(c) ("A request for the return of property wrongfully levied upon will not be considered adequate unless it is a written request containing the information required by paragraph (b) of this section. However, unless a notification is mailed by the IRS to the claimant within 30 days of receipt of the request to inform the claimant of the inadequacies, any written request will be considered adequate. If the IRS timely notifies the claimant of the inadequacies of his request, the claimant has 30 days from the receipt of the notification of inadequacy to supply in writing any omitted information. Where the omitted information is so supplied within the 30-day period, the request will be considered to be adequate from the time the original request was made for purposes of determining the applicable period of limitation upon suit under section 6532(c)).