EILEEN M. DECKER
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
BENJAMIN L. TOMPKINS (CA SBN Pending/ D.C. Bar No. 474906)
JOLENE TANNER (SBN 285320)
Assistant United States Attorneys
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-6165
    Facsimile: (213) 894-0115
    E-mail: benjamin.tompkins@usdoj.gov
           jolene.tanner@usdoj.gov

Attorneys for United States of America

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>SHERMAN MAZUR, et al.,<br><br>    Defendants. | Case No. 2:15-cv-5042-SVW<br><br>Hon. Stephen V. Wilson<br><br>UNITED STATES OF AMERICA'S OPPOSITION TO LONDON FINANCE GROUP, LTD.'S, MOTION FOR RELEASE OF PROPERTY SEIZED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g); MEMORANUM OF POINTS AND AUTHORITIES;  GOVERNMENT EXHIBITS 1-6; [PROPOSED] ORDER<br><br>Hearing Date:    October 5, 2015<br>Hearing Time:    1:30 p.m.<br>                Courtroom 6<br>                312 N. Spring St.<br>                Los Angeles. CA 90012 |

PLEASE TAKE NOTICE that the United States of America requests that the Court deny London Finance Group, Ltd.'s ("LFG"), Motion for Release of Property Seized Pursuant to Federal Rule of Criminal Procedure 41(g).  The grounds for this

response / motion to dismiss are more fully set forth in the accompanying Memorandum of Points and Authorities.[1]

This response / motion to dismiss is based upon this notice, the complete files and records of this action, and the attached Memorandum of Points and Authorities, including Government Exhibits 1 through 6 attached hereto.  Furthermore, no pre-filing conference of counsel pursuant to Local Rule 7-3 is required, because the parties previously discussed this matter during LFG's bankruptcy and were unable to resolve the parties' differences pertaining to whether LFG has a claim under Fed. R. Crim. P. 41(g). Furthermore, the parties' Stipulation and the Court's Order approving the parties' proposed briefing schedule contemplated a substantive response by the United States. Finally, please take notice that this matter will come on for hearing on October 5, 2015 at 1:30 p.m. by the Honorable Stephen V. Wilson, United States District Judge, in Courtroom 6, 312 N. Spring St., Los Angeles, CA 90012.

Dated: September 14, 2015        Respectfully submitted,

EILEEN M. DECKER
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division


    /s/ Benjamin L. Tompkins
BENJAMIN L. TOMPKINS
Assistant United States Attorney
JOLENE TANNER
Assistant United States Attorney

Attorneys for
UNITED STATES OF AMERICA

---

[1] In accordance with existing Ninth Circuit precedent discussed in the accompanying Memorandum of Points and Authorities, this response is properly considered as a motion to dismiss in accordance with Fed. R. Civ. P. 12(b).

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ……………..………………………………………………i

TABLE OF AUTHORITIES …………………………………………………..……ii

MEMORANDUM OF POINTS AND AUTHORITIES……...................................1

I.    Introduction………………………………………………...…………….…1

II.   Factual History………………………………………………………….…2

      A.   Mazur's Outstanding Tax Liabilities…................,,,…………………..2

      B.   RVLT shares ………………………………………………………... 4

III.  Procedural History ………………………………………………………7

IV.  Argument……………………….. ..........................................……………9

      A.   Rule 41(g) overview ………………………………………………… 9

      B.   Any claim by LFG under Rule 41(g) is now moot……………………11

      C.   LFG cannot use Rule 41(g) to circumvent the Internal Revenue
          Code……………………………… ..........………………………………12

      D.   Sovereign immunity bars the expansion of Rule 41(g)……….........16

      E.   Even if LFG raised a valid claim, this Court should still deny its
          claim……………………………………………………………...…..17

             1.   LFG's claim for wrongful levy is barred by the nine (9) month
                 statute of limitations under 26 U.S.C. § 6532(c)…...........……… 17

             2.   Allowing the IRS to sell the stock certificate would not
                 violate LFG's due process rights …………………………………19

             3.   Mazur's liabilities remain outstanding…………………….….... 21

V.   Conclusion………………………………………………………………25

i

1

2

# <u>TABLE OF AUTHORITIES</u>

3

## <u>CASES</u>

4

*Account Servs. Corp. v. United States*,

5

    09 Civ. 1495 (JM)(RBB), 2009 U.S. Dist. LEXIS 76531, 2009 WL 2755649 (S.D.

6

    Cal. Aug. 27, 2009)………………………………………………………………12

7

*Arford v. United States*,

8

    934 F.2d 229 (9th Cir. 1991)………………………………………………..10

9

*Baker v. United States*,

10

    817 F.2d 560 (9th Cir. 1987)……………………………………..…………11

11

*Bailey v. United States*,

12

    508 F.3d 736 (5th Cir. 2007)……………………………… ………………...16

13

*Clymore v. United States*,

14

    415 F.3d 1113 (10th Cir. 2005) ……...........................................…………...16

15

*De Almedia v. United States*,

16

    459 F.3d 377 (2d Cir. 2006)………………………………………...…………10

17

*De Gregory v. United States*,

18

    395 F. Supp. 171 (E.D. Mich. 1975)……………………………..…………19, 21

19

*Diaz v. United States*,

20

    517 F.3d 608 (2d Cir. N.Y. 2008)…………………….…………….....16, 17

21

*Dieckmann v. United States*,

22

    550 F.2d 622 (10th Cir. 1977)……………………………..…………….20

23

*Douglas v. United States*,

24

    562 F. Supp. 593 (S.D. Ga. 1983), *aff'd* 723 F.2d 919 (11th Cir.1983)…..…..…20

25

*EC Term of Years Trust v. United States*,

26

    550 U.S. 429 (2007)………………………………………….……13, 14, 18, 19

27

*Field v. United States*,

28

    263 F.2d 758 (5th Cir. 1959), *cert. denied* 360 U.S. 918 (1959)………………15

*Ferreira v. United States*,

    354 F. Supp. 2d 406 (S.D.N.Y. 2005)…………………………….…….…..12

*Gilliam v. Hovis (In re Marine Energy Sys. Corp.)*,

    430 B.R. 348 (D.S.C. 2010) …………………………………………....22, 25

*Ginsberg v. United States*,

    408 F.2d 1016 (9th Cir. 1969)…………………………...…………………15

*Goodwin v. United States*,

    935 F.2d 1061 (9th Cir. 1991) …………………………..……………………18

*Gordon v. United States*,

    227 Ct. Cl. 328, 649 F.2d 837 (Ct. Cl. 1981)…………………………….18, 20

*In re Cowen*,

    207 B.R. 207 (Bankr. E.D. Cal. 1997)……………………………………22, 25

*In re Taylor*,

    81 F.3d 20 (3d Cir. 1996)……………………………………….…………22, 25

*Jachetta v. United States*,

    653 F.3d 898 (9th Cir. 2011) …………………………...……………10, 11

*Jackson v. United States*,

    526 F.3d 394 (8th Cir. 2008)……………………………….……………...9

*Kitty's East v. United States*,

    905 F.2d 1367 (10th Cir. 1990) …………………………...……………10

*Kwai Fun Wong v. Beebe*,

    732 F.3d 1030 (9th Cir. 2013)………………………...………………..17

*Mullane v. Central Hanover Trust Co.*,

    339 U.S. 306 (1950)………………………………………….……..20

*Naylor v. United States*,

    No. 13-CV-2481-BTM, 2013 WL 6909521 (S.D. Cal. Dec. 27, 2013)…………..9

*Nesovic v. United States*,

    71 F.3d 776 (9th Cir. 1995)……………………………………………17

iii

*Norem v. Norem*,

    Civil Action No. 3:07-cv-0051, 2008 WL 2245821(N.D. Tex. June 2,

    2008)……………………………………………………………………..19

*Okoro v. Callaghan*,

    324 F.3d 488 (7th Cir. 2003) ……………………..…………………...11

*Owen v. United States*,

    277 F.2d 790 (9th Cir. 1960)..………………………………………...15

*Ramsden v. United States*,

    2 F.3d 322 (9th Cir. 1993) …………………………...………………10, 13

*Reece v. Scoggins*,

    506 F.2d 967 (5th Cir. 1975) …………………...…………………………18

*Richmond v. United States*,

    172 F.3d 1099 (9th Cir.1999)………………………………………….23

*Severo v. Comm'r*,

    129 T.C. 160, 2007 U.S. Tax Ct. LEXIS 36, 129 T.C. No. 17 (T.C. 2007)….22, 25

*Simpson v. Thomas*,

    271 F.2d 450 (4th Cir. 1959) ………………………….……...………15

*Sisseton-Wahpeton Sioux Tribe v. United States*,

    895 F.2d 588 (9th Cir. 1990)…………………………….……………17

*United Sand and Gravel Contractors, Inc., v. United States*,

    624 F.2d 733 (5th Cir. 1980)…………………………………….12, 18, 19

*United States v. Barnett*,

    Case No. 13-civ-7315-JMH-HAI, 2014 WL 1413530 (E.D. Ky. Ap. 11, 2014)...11

*United States v. Bastien*,

    2013 U.S. Dist. LEXIS 59615, 2013 WL 1701601 (E.D.N.Y. Apr. 19, 2013)…..12

*United States v. Bonaguro*,

    294 F. Supp. 750, 754 (E.D.N.Y. 1968), *aff'd sub nom. United States v. Dono*,

    428 F.2d 204 (2d Cir.), *cert. denied*, 400 U.S. 829 (1970)………………..….…14

*United States v. Chambers*,

    192 F.3d 374 (3d Cir. 1999) ……………………………………………………..10

*United States v. Comprehensive Drug Testing, Inc.*,

    579 F.3d 989 (9th Cir. 2009)…………....................................................................9

*United States v. Doe*,

    438 F. Supp. 2d 796 (S.D. Ohio 2006) …………………………..….…22, 25

*United States v. Dominguez*,

    09 Civ. 5661 (DC), 2009 U.S. Dist. LEXIS 65095 (S.D.N.Y. July 27, 2009) …..12

*United States v. Francis*,

    646 F.2d 251 (6th Cir.), *cert. denied*, 454 U.S. 1082 (1981)………………..………15

*United States v. Freedman*, 444 F.2d 1387 (9th Cir.), *cert. denied*,

    404 U.S. 992 (1971) …………………………………………..…………….12, 13, 15

*United States v. Fitzen*,

    80 F.3d 387 (9th Cir. 1996) …………………………..…………………….13-15

*United States v. Holmes*,

    09 Cr. 126 (JGK), 2013 U.S. Dist. LEXIS 8815 (S.D.N.Y. Jan. 22, 2013) ……..12

*United States v. Ibrahim*,

    522 F.3d 1003 (9th Cir. 2008)……………………………….…………………9-10

*United States v. Kahre*,

    737 F.3d 554 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 59 (2014)…..……. 9, 13, 14

*United States v. Marshall*,

    526 F2d 1349 (9th Cir. 1976) …………………………...………………13, 14

*United States v. Martinson*,

    809 F.2d 1364 (9th Cir. 1987)……………………………….…………...10

*United States v. Mitchell*,

    445 U.S. 535 (1980). ………………………………………………11

*United States v. Mitchell*,

    463 U.S. 206 (1983) …………………………….…………………10

*United States v. MPM Financial Group, Inc.*,

    215 F. App'x 476 (6th Cir.2007) ……………………………………...11

*United States v. National Bank of Commerce*,

    472 U.S. 713 (1985)..………………………………………….………13

*United States v. Nordic Village*,

    503 U.S. 30 (1992) …………………………………………...…………17

*United States v. Park Place Assocs., Ltd.*,

    563 F.3d 907 (9th Cir. 2009)………………………………………10-11

*United States v. Ritchie*,

    342 F.3d 903 (9th Cir. 2003)………………………...………………...10

*United States v. Van Cauwenberghe*,

    934 F.2d 1048 (9th Cir. 1991) …………………………………………...10

*Welsh v. United States*,

    220 F.2d 200 (D.C. Cir. 1955)………………………………………13, 15

*Winebrenner v. United States*,

    924 F.2d 851, 1991 U.S. App. Lexis 873 (9th Cir. Jan. 23, 1991) *overruled on other grounds in WWSM Investors v. United States*, 64 F.3d 456 (9th Cir. 1995), and revisited in *Fidelity and Deposit Co. v. City of Adelanto*, 87 F.3d 334 (9th Cir. 1996) …………………………………………………...…..19


**<u>STATUTES AND REGULATIONS</u>**

11 U.S.C. § 105 …………………………………………………………..8

11 U.S.C. § 362……………………………………………...…………….3, 4, 7, 23

11 U.S.C. § 542 …………………………………………………………...…8

11 U.S.C. § 727…………………...………………………………….4, 7, 25

11 U.S.C. § 1112………...…………………………………………………8

26 U.S.C. § 6213………………………………………………………...…3

26 U.S.C. § 6502. ………………………………………………...….18, 21, 25

26 U.S.C. § 6503……………………………………………...…………7, 21, 25

26 U.S.C. § 6331……………………………………………………...………13

26 U.S.C. § 6332……………………………………………………………11

26 U.S.C. § 6335……………………………………………………18, 20, 21

26 U.S.C. § 6532…………………………………………………...…passim

26 U.S.C. § 7426………………………………………………………...…passim

28 U.S.C. § 1346………………………………………………...……14

28 U.S.C. § 2401………………………………………………...……17

26 C.F.R. § 301.6532-3………………………………………18, 19

26 C.F.R. § 301.6343-2………………………………………….......19

## **RULES**

Fed. R. Civ. P. 12…………………………………………………………2, 9

Fed. R. Crim. P. 41…………………………………………...passim

Fed. R. Evid. 201…………………………………………………...…...2

Local Rule 7-3…………………………………………...……….....2

Local Rule 16-12………………………………………………......2

## **SECONDARY SOURCES**

Black's Law Dictionary (8th ed. 2004)………………………………13

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

### **I.    Introduction**

3      This Court should reject London Finance Group's ("LFG") latest attempt to force

4   the Internal Revenue Service to return a stock certificate it received from the Federal

5   Bureau of Investigation.  The IRS levied the stock so that the Service could sell the

6   shares LFG held as the nominee of Sherman Mazur and apply the proceeds towards

7   Mazur's outstanding tax liabilities.  Previously, in 1993, Mazur pled guilty to seven

8   counts of bankruptcy and tax fraud.  [Dkt. 1-2, Ex. 16 (June 24, 1998 Stipulation) at 4-

9   5.]  As a result, Mazur was sentenced to six years in prison and fined $250,000, and

10  served approximately three years.  [*Id.*]

11     In an effort to thwart the IRS's January 6, 2015 sale of stock LFG filed its Chapter

12  11 bankruptcy petition.  [Dkt. 1 at 7; *see also* Dkt. 1-2, Ex. 9 (Bates Number 103 –

13  Notice of Public Sale).]  On July 2, 2013, the IRS served the FBI with a Notice of Levy,

14  dated June 21, 2013, seeking a reissued stock certificate pertaining to shares seized by

15  the FBI.  [Declaration of Farrell Stevens & Ex. 1 (June 21, 2013 Notice of Levy),

16  attached to Dkt. 1-2 as Ex. 12.[2]]  In its bankruptcy, in February 2015, LFG filed an

17  adversary proceeding seeking the return of the stock certificate at issue here, asserting a

18  claim for wrongful levy and seeking a declaratory judgment that the IRS was barred

19  from collecting Mazur's outstanding tax liabilities.  After the United States moved to

20

21  _____

[2] In accordance with Fed. R. Evid. 201 and for the completeness of the record, the United
22  States requests that this Court take judicial notice of the pleadings and accompanying
exhibits filed in LFG's bankruptcy and adversary proceeding.  Attached to this Motion
23  as Government Exhibit 1 is LFG's adversary complaint (with exhibits), Government
Exhibit 2 is the United States' motion to dismiss LFG's bankruptcy (with exhibits),
24  Government Exhibits 3 and 4 are LFG's oppositions to these motions (without exhibits
since those exhibits mirror Docket No. 1-1/1-2).  Government Exhibits 5 and 6 are the
25  United States' replies to LFG's oppositions.  Included with Exhibit 2 is LFG's 2008
filing with the California Secretary of State, which lists Mazur as LFG's officer and
26  director, as well as the June 2013 Declaration of Ari Kaplan in which he declares he has
no interest in the remaining fifty (50) percent of the shares at issue in this proceeding.
27  Also, included with Exhibit 6 are emails between Kaplan's and/or Mazur's attorney and
the United States Attorney's Office regarding the stock shares at issue in this proceeding.

28

dismiss the underlying bankruptcy and LFG's adversary complaint challenging the IRS levy, in accordance with Fed. R. Crim. P. 41(g) ("Rule 41(g)"), LFG now moves this Court to require the United States to turn over the same stock certificate that is at issue in its wrongful levy adversary complaint.[3]  Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), this Court should deny the motion, because (i) LFG's claim is now moot since the FBI surrendered the stock certificate at issue to the IRS, (ii) LFG has an adequate remedy of law – namely its exclusive remedy is to file a wrongful levy claim under 26 U.S.C. § 7426, which it filed with the Bankruptcy Court, and (iii) the United States' limited waiver of sovereign immunity under Rule 41(g) cannot be expanded to allow LFG's claim.  As a result, this Court should reject LFG's attempt to circumvent the Internal Revenue Code.  Finally, to the extent the Court reaches the merits, it should find that the IRS is entitled to retain the stock certificates and sell them to apply the proceeds towards Mazur's tax liabilities.[4]

## II.   Factual History

### A. Mazur's outstanding tax liabilities and bankruptcy proceeding

Sherman Mazur owes more than $75 million in outstanding federal tax liabilities. [Stevens Decl. Ex. 1, attached to Dkt. 1-2, Ex. 12; Ex. 9 (Bates Number 87 - IRS Notice of Federal Tax Lien).]  Mazur's liabilities include the tax years 1982 through 1987, that

---

[3] Separately, LFG moved to amend its adversary complaint to assert a claim under Rule 41(g), and then moved to withdraw the bankruptcy reference.  During the July 21, 2015 hearing, the Bankruptcy Court did not rule on LFG's motion to amend and continued the hearing until October 6, 2015.  Because this Court denied LFG's request to consolidate these proceedings, LFG's motion to withdraw the reference is scheduled to be decided by Judge David O. Carter.  [Case No. 2:15-cv-5030-DOC, Dkt. 8.]  On September 11, 2015, Judge Carter issued an order deferring ruling on LFG's withdrawal motion until this Court decides LFG's Rule 41(g) claim.  [Case No. 2:15-cv-5030-DOC, Dkt. 13.]

[4] In accordance with the parties' stipulation and the Court's Order, Dkts. 6 & 7, the United States submits its response.  Even though this response is considered a Rule 12(b) motion under existing Ninth Circuit precedent and this matter is not specifically listed in L.R. 16-12 (Exemptions), the United States has not recently conferred with opposing counsel in accordance with L.R. 7-3.  Previously, as exhibited in Dkt. 1-2, Ex. 13, the parties' counsel discussed LFG's Rule 41(g) claim in connection with LFG's bankruptcy and we were unable to resolve our respective differences concerning the scope of its claim.  As such, the United States believes this Court should decide its motion.

LFG asserts are no longer outstanding, as well as tax years 1991, 2001, 2002, 2003, 2004 and a civil penalty for the period ending September 30, 1987 that LFG concedes are outstanding (while claiming they have been satisfied). [Notice of Levy, attached as Ex. 1 to the Stevens Decl.; *see also* Dkt. 1-2, Ex. 9 at 87 (NFTL).[5]] In an effort to collect Mazur's liabilities, on June 21, 2013, the IRS served the FBI with a Notice of Levy pertaining to 718,494 shares of Revolution Lighting Technologies, Inc. (NASDAQ Symbol RVLT), which equaled fifty (50) percent of the seized shares.[6] *See id.*

Around the time the United States was prosecuting Mazur for tax and bankruptcy fraud, on March 1, 1993, his creditors filed an involuntary bankruptcy on his behalf. [Dkt. 1 at 16-17 (citing *In re Sherman Mazur*, Case No. 1:93-bk-16885-GM (Bankr. C.D. Cal.)).] In accordance with 11 U.S.C. § 362, Mazur's bankruptcy stayed the IRS's assessment and collection of his tax liabilities. [*Id.* at 17.] Prior to the filing of the bankruptcy, the IRS had not assessed Mazur's 1982 through 1987 tax liabilities, because Mazur filed three petitions in the United States Tax Court seeking a redetermination of his tax liabilities -- on March 17, 1988 (years 1982-1983), on March 17, 1989 (year 1984) and on December 14, 1990 (years 1985-1987). [Dkt. 1 at 18-19; Dkt. 1-2, Ex. 16 (June 24, 1998 Stipulation between the Chpt. 7 Trustee and the United States at 2-4).] During the pendency of Mazur's Tax Court petitions, the IRS was precluded from assessing Mazur's outstanding tax liabilities. *See* 26 U.S.C. § 6213(a). In Mazur's bankruptcy, the IRS filed a proof of claim for $25,789,144.17, and asserted that his liabilities were excepted from discharge under the Bankruptcy Code. [Dkt. 1-2, Ex. 16.]

---

[5] On June 24, 2013, the IRS recorded a NFTL against LFG as nominee of Mazur. [Dkt. 1-2, Ex. 6 (page 87).] In this NFTL, the IRS provided that "the United States of America has lien rights against any right, title or interest that London Finance Group, Ltd., may have or may acquire in the property described as 718,494 shares of stock in the company named Revolution Lighting Technologies, Inc., currently trading on the NASDAQ stock exchange under the stock symbol (RVLT) as nominee of Sherman Mazur." [*Id.*] In July 2013, the IRS mailed copies of the NFTL to LFG's addresses at 2224 Main St. and 1100 Glendon Ave. [Stevens Decl. at ¶ 7.]

[6] As of September 11, 2015, RVLT shares were trading at $1.06 or a total value of over $760,000. Shares have fallen from around $1.50 when the LFG declared bankruptcy. As long as the automatic stay remains in place and assuming the stock price continues to drop, the United States will continue to be harmed.

3

In order for the Tax Court proceedings to resume and for any assessments of Mazur's outstanding tax liabilities to be made, Duke Salisbury, the Chapter 7 Trustee, and the United States entered into a Stipulation, dated June 24, 1998.  [Dkt. 1 at 17-18; Dkt. 1-2, Ex. 16.]  Specifically, the parties agreed that upon entry of the bankruptcy court's order approving the Stipulation the automatic stay would be "modified immediately" to "permit the continuation of the above-referenced proceedings in the United States Tax Court and to permit the assessment of any tax liabilities determined by the United States Tax Court."  [Ex. 16 at 5, ¶ 1.]  The Stipulation did not allow the IRS to collect from bankruptcy estate assets to satisfy any future assessments.  [*E.g.*, *Id.*]  Indeed, even if an attachment (*i.e.*, lien) encumbered Mazur's property, the Trustee could claim said funds for the bankruptcy estate and the court retained jurisdiction to determine whether something was property of the estate.  [*Id.* at 6, ¶ 3.]  On August 31, 1998, the bankruptcy court entered an order lifting the automatic stay under 11 U.S.C. § 362(d)(1). [Dkt. 1-2, Ex. 17.]  The August 31, 1998 Order **specifically** stated that the "Tax Court decision will determine amount of the IRS claim, but Bankruptcy Court to determine priority in assets."  [*Id.* at ¶ 7.]  The bankruptcy court did not lift the automatic stay as so far as it prohibited the IRS from collecting from Mazur's pre-petition assets.

After the August 31, 1998 Order, the Tax Court proceedings resumed.  [Dkt. 1 at 18-19.]  The parties entered into a stipulated judgment that resulted in the assessment of Mazur's outstanding 1982 through 1987 tax liabilities in May, June, July and August 2002.  [Dkt. 1-2, Ex. 11 at ¶ 42-43; Ex. 6 (NFTL).]  Following these assessments, on April 12, 2006, the bankruptcy court entered a discharge in Mazur's bankruptcy that lifted the automatic stay.  [*Id.* at ¶ 50; *see also* 11 U.S.C. §§ 362(c)(2)(C) & 727.]

### B.     RVLT shares

On February 13, 2013, the FBI seized a stock certificate evidencing 1,436,988 in shares of RVLT that was issued in LFG's name.  [Dkt. 1 at 5; Dkt. 1-2 (stock certificate), Gov. Ex. 1 (Dkt. 6-1, Ex. B (April 4, 2013 letter to James A. Bowman)).]  The FBI seized the LFG stock certificate from Mazur's – rather than Kaplan's – office.  [Dkt. 1-2, Ex. 2 at 23 (item 1 of the receipt states that the RVLT share certificate was taken from

Mazur's office); *see also* Gov. Ex. 2 (Exhibit 1 to the U.S. Motion indicates Mazur used to be LFG's CEO at least in 2008).]  The FBI receipt indicating that the shares were seized from Mazur's office directly contradicts paragraph 17 of Kaplan's Declaration that "Mazur never possessed or had any control of the [s]hares before or after Seesmart transferred them to LFG . . . ."  [Dkt. 1-1, Kaplan Decl. at ¶ 17.]

In an attempt to get the FBI to return fifty percent of the RVLT shares, on April 4, 2013, Kaplan's attorney represented that Kaplan and Mazur agreed to split these shares 50/50, even though the parties' custom was for Mazur to receive more than 50 percent of any shares issued in connection with any of LFG's business activities.  [*Id.* at 2; *see also* Gov. Ex. 1 (Adv. Dkt. 6-1 at 37 (emails between Mazur and Kaplan where Mazur approves the split for both the consulting fees and shares)).]  Because Kaplan personally claimed ownership of 718,494 (out of 1,436,988) of the shares and even though those very same shares were also titled in LFG's name, the United States limited its lien to Mazur's 718,494 shares.[7]  [Dkt. 1-2, Ex. 6 (NFTL); *see also* Gov. Ex. 2 (included with this Exhibit is a June 2013 Kaplan Declaration indicating that he has no interest in the remaining 50 percent); Gov. Ex. 5 (includes emails from Kaplan's counsel (Jason de Bretteville) acknowledging that Mazur has an interest in the remainder and an offer to help the IRS if it needed assistance in selling the remaining 50 percent).[8]]  Indeed, the

---

[7] LFG takes inconsistent positions with respect to these shares.  On the one hand, LFG claims that the United States has no right to these shares, but on the other hand does not take issue with Kaplan's decision to reissue the other 50 percent of the shares in his own name so that he could sell the shares and pocket the proceeds.  If 50 percent of the RVLT shares were held in the name of LFG for Kaplan, then this Court should assume that based upon the same agreement referenced in the April 5, 2013 letter that the other 50 percent held in the name of LFG were held for Mazur as his alter ego and/or nominee in connection with the same agreement memorialized in Exhibit 4 to the April 2013 letter.  [Gov. Ex. 1 (Adv. Dkt. 6-1, Ex. B (Ex. 4 thereto)).]

[8] While LFG seems to suggest that it did not know before April 8, 2014 about the IRS's claim to the shares, Dkt. 1 at 6; Dkt. 1-1, de Bretteville Decl. at ¶¶ 6-7; Gov. Exs. 3 and 4 (LFG's oppositions), the emails exchanged between the United States Attorney's Office and counsel for both Kaplan and Mazur establish that Kaplan's counsel was aware that the IRS claimed an interest in Mazur's 50 percent interest,  [Gov. Ex. 6 (emails attached to Declaration of James A. Bowman (formerly an AUSA with the U.S. Attorney's Office).]  In addition to providing a declaration from Kaplan indicating that he has no interest in the remaining fifty percent of the shares, Kaplan's attorney even

*(footnote cont'd on next page)*

stock certificates were reissued so that the certificate possessed by the IRS is only for 718,494.  [*Cf.* Dkt. 1-2, Ex.15 (request for issuance of the stock certificate), Dkt. 1-2, Ex. 1 (original stock certificate), Ex. 6 (NFTL), and Ex. 12 (Stevens Decl. Ex. 1).]  In order to ensure that the remaining RVLT shares could be given to the IRS, and that the IRS could sell the shares and ultimately apply the proceeds towards Mazur's outstanding tax liabilities, the IRS personally served the FBI with a Notice of Levy.  [Stevens Decl. at ¶ 6.]  LFG waited almost nineteen months (*i.e.*, until February 5, 2015) to file a wrongful levy action.  Prior to filing suit, Kaplan's / LFG's attorney sent a letter that purported to comply with 26 U.S.C. § 6532(c) requesting a return of the seized shares.[9]  [Dkt. 1-2, Ex. 4 (69).]  This letter was not sent within 9 months of the date of the IRS levy.  [*Id.*]

In order for the United States Attorney's Office and the FBI to agree to relinquish the "Kaplan" 50 percent of the shares, on June 12, 2013, Kaplan provided a sworn declaration.  [2013 Kaplan Declaration, included with Gov. Ex. 2.]  According to Kaplan's declaration, he has "no personal ownership interest or right to the remaining fifty percent (50%) of the RLT stock certificate, number RL0016, by virtue of my position as President of LFG or otherwise."  [Kaplan Decl. at ¶ 6; *see also* Gov. Ex. 6 (collection of emails between Kaplan's counsel and AUSA Bowman establishing that Kaplan's counsel was aware of the IRS's claim, that Kaplan offered to help the United States obtain the other half that Kaplan's counsel referred to as Mazur's and disclosing

offered to provide assistance to ensure that the IRS could effectuate its claim to the shares, and repeatedly referred to the interests as Sherman's and Ari's as opposed to LFG's.  [Gov. Ex. 6 (Bowman Decl. at ¶¶ 4-6; Bowman Decl. Ex. 1).]  Furthermore, Mazur's counsel objected to the IRS's claim, demanded that Mazur's shares be returned to him and threatened to bring a Rule 41(g) claim if the shares were not returned.  [Bowman Decl. at ¶ 6 & Ex. 1 at 18.]  Finally, Exhibit 7 to LFG's Rule 41(g) motion is a July 24, 2014 letter from Samuel Landis, Mazur's tax counsel, that requests that the remaining fifty percent of the shares be returned to Mazur.  [Dkt. 1-2, Ex. 7 (this letter also acknowledges that LFG received the 2013 NFTL).]

[9] These negotiations occurred between de Bretteville, Kaplan's counsel, and the United States Attorney's Office.  De Bretteville also represented LFG and sent a letter on behalf of LFG requesting the return of the stock certificate.  [Dkt. 1 at 4.]

the intention of the IRS to levy the shares of stock possessed by the FBI).[10]]  Despite his declaration and the understanding reached between the United States Attorney's Office and Kaplan's counsel, Kaplan now seeks to recover the remaining shares, after the Court dismissed the indictment against Kaplan and Mazur (and the other defendants).  [Dkt. 1 at 5.[11]]  If LFG receives these shares and after any creditors entitled to priority are paid, Kaplan stands to receive the balance of the proceeds as payments towards claims he filed in LFG's bankruptcy.  [LFG Bankruptcy Claims' Register.]

### III.   Procedural History

In an effort to stop the IRS's January 6, 2015 sale of stock that LFG held as the nominee of Mazur, LFG filed its Chapter 11 bankruptcy petition.  The automatic stay that resulted from LFG's bankruptcy prevents the IRS from selling the shares in its possession.  *See* 11 U.S.C. § 362.  On February 5, 2015, LFG, as Debtor-in-Possession, filed an amended complaint asserting claims for a turnover of the stock certificate held by the IRS, a declaratory judgment that Mazur does not owe any tax liabilities for tax years 1982 through 1987, and wrongful levy.  [Dkt. 1-2, Ex. 11; Gov. Ex. 1.]  On April 20, 2015, the United States moved to dismiss this adversary proceeding.   [Dkt. 1-2, Ex. 12.]  Initially, the United States asserted that the Bankruptcy Court lacks subject matter jurisdiction to decide Mazur's tax liabilities, because the Declaratory Judgment Act, 28 U.S.C. § 2201, precludes the declaratory relief LFG requests (Claim II).  Second, in the alternative, any outstanding tax liabilities for tax years 1982 through 1987 remain outstanding, because the collection statute was tolled until Mazur received his discharge under 11 U.S.C. § 727 on October 12, 2006.  *See* 26 U.S.C. § 6503(h)(2).  As a result,

---

[10] The United States acknowledges that Mazur filed an answer in the adversary proceeding indicating that he lacked an interest.  [Dkt. 1-2, Ex. 14.]  Mazur's answer is insufficient to defeat an IRS tax lien, because Mazur cannot now disclaim his fifty percent interest, since the IRS tax lien attached when Mazur obtained a property right in the stock certificate.

[11] While the United States dismissed the indictment against Kaplan and Mazur, the United States did not dismiss another indictment against other individuals that this Court acknowledged in denying LFG's request to consolidate the Rule 41(g) and the withdrawal of the reference proceedings.  *See United States v. Possino, et al.*, Case No. 2:13-cr-00048-SVW.

7

the United States contends the earliest collection statute of limitations for these periods would not expire until mid-2017.  Third, the United States argued that the Bankruptcy Court should dismiss LFG's wrongful levy claim (Claim III) for failing to file a wrongful levy action within the nine-month period required under 26 U.S.C. § 6532(c)(1), as incorporated by 26 U.S.C. § 7426(i).  Fourth, if the Bankruptcy Court dismisses LFG's untimely wrongful levy claim, then the United States urged the Court to also dismiss LFG's turnover claim (Claim I) for failure to state a claim.  LFG opposed the United States' motion and the United States' filed its reply brief.  [Gov. Ex. 3 (LFG's opposition without exhibits) and Gov. Ex. 5 (U.S. reply).]  In its opposition, LFG has now conceded that it does not have a claim under 11 U.S.C. § 542 (Count I) and is now relying upon 26 U.S.C. § 7426 to seek relief against the United States. [Gov. Ex. 3.]

Separately, on April 21, 2015, the United States moved the Bankruptcy Court to dismiss the bankruptcy case pursuant to 11 U.S.C. §§ 105 and 1112, on the grounds that (i) the petition was not filed in good faith, (ii) the petition was filed to delay and hinder the IRS's January 6, 2015 sale of shares of stock of LFG, held as Mazur's nominee, and prevent the IRS from applying the proceeds against Mazur's $75 million dollar tax liability, (iii) LFG is currently solvent based upon the listed assets and disclosed claims, and (iv) LFG filed this bankruptcy even though Kaplan, LFG's President, provided a sworn declaration indicating that he had no right to the shares at issue.  LFG opposed the United States' motion and the United States filed a reply.  [Gov. Exs. 2, 4 & 6 .]

On July 21, 2015, the Bankruptcy Court held a hearing and elected to continue the hearings on the United States' motion to dismiss the adversary, the United States' motion to dismiss the bankruptcy, and LFG's motion to amend the adversary and for approval of its Chapter 11 disclosure statement until October 6, 2015.[12]

Parallel to these proceedings, on July 2, 2015, LFG filed both this Rule 41(g) claim and its motion to withdraw the bankruptcy court reference.  On July 14, 2015, this

---

[12] If this Court has not decided this motion by then, the Bankruptcy Court indicated during the July 21, 2015 hearing that it was likely to continue the October 6 hearing.

Court declined to transfer the motion to withdraw the reference to its calendar so that it could decide both matters.  [Case No. 2:15-cv-5030-DOC, Dkt. 8.] Judge Carter has now deferred deciding the motion to withdraw the reference until after this Court decides the pending Rule 41(g) claim that is scheduled to be heard on October 5, 2015.

## IV.   Argument

### A. Rule 41(g) overview

Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") states that:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41.[13] Where the criminal proceeding has ended, a Rule 41(g) motion is treated as a civil complaint governed by the Federal Rules of Civil Procures.  *See Naylor v. United States*, No. 13-CV-2481-BTM, 2013 WL 6909521, at *1 (S.D. Cal. Dec. 27, 2013) (*citing United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008)).  "[W]hen the motion is filed by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1001 (9th Cir. 2009) (en banc).  In opposing LFG's motion, this Court should consider the United States' response as a motion to dismiss under Fed. R. Civ. P. 12(b).  *See Ibrahim,* 522 F.3d at 1007-1008 (court erred in converting Rule 41(g) motion into one for summary judgment, because the Rule 41(g) motion must be treated as a civil complaint when there is no pending criminal prosecution); *see also United States v. Ritchie*, 342 F.3d 903, 906-07 (9th Cir. 2003) (treated opposition as the equivalent as a Rule 12(b)(6) motion and

---

[13] On December 1, 2002, Rule 41(e) was redesignated Rule 41(g) without substantive changes. *Jackson v. United States*, 526 F.3d 394, 396 fn.1 (8th Cir.2008) (*referencing* Fed. R. Crim. P. 41 Advisory Committee Note to the 2002 amendments.); *United States v. Kahre*, 737 F.3d 554, 566, fn. 6 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 59 (2014).

reversed when district court considered matters outside the record without converting the motion to a Rule 56 motion for summary judgment).

As an equitable remedy, relief under Rule 41(g) "is available only when there is **no adequate remedy at law** and the equities favor the exercise of jurisdiction." *De Almedia v. United States*, 459 F.3d 377, 382 (2d Cir. 2006) (emphasis added). In considering a Rule 41(g) motion, courts consider such a motion as an equitable complaint and the court "must exercise 'caution and restraint'" before exercising equitable jurisdiction over its merits. *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) (quoting *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)). After a criminal proceeding ends and assuming the seizing party still possesses the property, the government bears the burden to demonstrate that it has a legitimate reason to retain the property. *See United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999); *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). It must show that it has a "cognizable claim of ownership or right to possession adverse to that of" the claimant. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1060-61 (9th Cir. 1991) ("[a] defendant's Rule 41(e) motion for return of property . . . may be denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues").

When considering LFG's Rule 41(g) motion, this Court must also consider the limits of the United States' waiver of sovereign immunity. "'It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Thus, "[i]n an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity." *Arford v. United States*, 934 F.2d 229, 231 (9th Cir. 1991); *accord, e.g., United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923–24 (9th Cir. 2009). That waiver "cannot be implied, but 'must be unequivocally expressed in statutory text.'" *Jachetta*, 653 F.3d at 903 (quoting *Lane*

*v. Pena*, 518 U.S. 187, 192 (1996)).  Unless LFG establishes that Rule 41(g) constitutes a waiver of sovereign immunity that provides an additional remedy to the one provided for wrongful levy actions, this Court should dismiss its claim.  *See United States v. Mitchell*, 445 U.S. 535, 538-39 (1980) (waiver of sovereign immunity may not be implied but must be unequivocally expressed by federal statute, and the terms of the waiver define the court's jurisdiction); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987) ("A party bringing a cause of action against the federal government bears the burden of showing an unequivocal waiver of immunity.").

### B. Any claim by LFG under Rule 41(g) is now moot

Rule 41(g) allows a party to move the court for the return of property.  However, in this case, any possible claim is now moot since the FBI, the seizing party, no longer possesses the stock certificate at issue.  [*E.g.*, Dkt. 1; Dkt. 1-1, de Bretteville Decl. at ¶¶ 4, 7-8; Dkt. 1-2, Exs. 4, 7, & 10 (letters to the IRS requesting the return of the stock); Dkt. 1-2 Ex. 9 (IRS notice of sale).]  There is no dispute that neither the FBI, the entity that seized the stock certificate at issue, nor the U.S. Attorney's Office, the Office that was responsible for Mazur's and Kaplan's prosecution, possess the stock certificates at issue.  [*Id.*]  Rather, the IRS received the stock certificates after the FBI surrendered the stock certificate in response to an IRS levy.  *See United States v. Barnett*, Case No. 13-civ-7315-JMH-HAI, 2014 WL 1413530, at *2 (E.D. Ky. Ap. 11, 2014) (denied Rule 41(g) motion requesting the return of currency where the IRS "issued a notice of levy to ATF" and therefore the ATF "was required to deliver the seized funds to the IRS" (citing *United States v. MPM Financial Group, Inc.*, 215 F. App'x 476, 478 (6th Cir. 2007) (explaining that section 6332 provides that the person possessing property subject to levy must surrender property to IRS)).

LFG cites no authority that would permit this Court to order the IRS to return the RVLT stock certificate without having to prevail in a wrongful levy suit.  To the extent argued, this Court should reject any argument that the surrender of the stock certificate from the FBI to the IRS should excuse LFG from having to bring a wrongful levy suit to seek the return of the stock certificate.  *See United Sand and Gravel Contractors, Inc., v.*

11

*United States*, 624 F.2d 733, 736-37 (5th Cir. 1980) (rejected argument that surrender of property from one federal agency to the IRS should be considered a set off that was not subject to the wrongful levy requirements and numerous courts recognized the IRS's practice to use a formal levy) (citing *United States v. Freedman*, 444 F.2d 1387 (9th Cir. 1971) , *cert. denied*, 404 U.S. 992 (1971), and other authorities from the Second and Fourth Circuits) (partial citations omitted)).  Therefore, the Court cannot order the FBI, or the U.S. Attorney's Office, to return property it does not have and any such claim should be dismissed as moot.  *See United States v. Bastien*, 2013 U.S. Dist. LEXIS 59615, *14-15, 2013 WL 1701601 (E.D.N.Y. Apr. 19, 2013) (denied Rule 41(g) motion as moot as to items the government previously returned to the claimant's brother); *United States v. Holmes*, 09 Cr. 126 (JGK), 2013 U.S. Dist. LEXIS 8815, at *1 (S.D.N.Y. Jan. 22, 2013)  (denying defendant's Rule 41(g) motion as moot because the government produced evidence that the materials that were the subject of the motion were previously returned to the defendant's sister); *United States v. Dominguez*, 09 Civ. 5661 (DC), 2009 U.S. Dist. LEXIS 65095, at *5 (S.D.N.Y. July 27, 2009) (denying Rule 41(g) motion because the government submitted evidence demonstrating that it was not in possession of the property in question, and the movant failed to then provide any evidence tending to show that such property was actually taken from him in the first place); *Ferreira v. United States*, 354 F. Supp. 2d 406, 410 (S.D.N.Y. 2005) ("[T]he Government turned over to Ferreira all of the tapes that he made and turned over to the Government. Ferreira's Rule 41(g) Motion is now moot as to those materials.").

### C. LFG cannot use Rule 41(g) to circumvent the Internal Revenue Code

Because LFG has an adequate remedy of law, this Court should reject its attempt to circumvent the statute of limitations for a wrongful levy claim.  Even though the United States contends that LFG's claim is untimely, there is no support for the proposition that this means LFG lacks an adequate remedy at law.  Failing to comply with the applicable statute of limitations does not justify the expansion of Rule 41(g) to provide LFG with an alternative remedy.  Rule 41(g) provides an equitable remedy when the available legal remedies are inadequate.  *See Account Servs. Corp. v. United States*,

09 Civ. 1495 (JM)(RBB), 2009 U.S. Dist. LEXIS 76531, 2009 WL 2755649, at *4 (S.D. Cal. Aug. 27, 2009) (declining jurisdiction where there is an adequate remedy at law).  In *Ramsden*, the court identified four factors to help guide the courts in deciding whether to invoke its equitable jurisdiction: (1) whether the claimant will be plainly aggrieved by the deprivation of the property; (2) whether the claimant is likely to suffer irreparable injury if it's not returned, (3) whether the claimant lacks an adequate remedy at law; and (4) whether the government showed a callous disregard for the rights of third parties. *See* 2 F.3d at 325.  In this case, LFG has an adequate remedy at law, has brought a wrongful levy claim and is not going to suffer irreparable injury without this Court deciding its Rule 41(g) motion since the same remedy is available if it prevails in its other suit.  Thus, this Court should follow the Ninth Circuit decisions that have rejected similar Rule 41(g) motions attempting to circumvent the Internal Revenue Code.  *See, e.g., Kahre*, 737 F.3d at 565-66; *United States v. Fitzen*, 80 F.3d 387, 388-389 (9th Cir. 1996); *United States v. Marshall*, 526 F2d 1349, 1355 (9th Cir. 1976); *Freedman*, 444 F.2d at 1388; *see also Welsh v. United States*, 220 F.2d 200, 203 (D.C. Cir. 1955) (affirmed denial of Rule 41 motion where claimant had a remedy under the Internal Revenue Code to challenge the tax liability and the seizure of property).

26 U.S.C. § 6321 provides that "(i)f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . .shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  Because a federal tax lien is not self-executing, "the IRS must take 'affirmative action . . .to enforce collection of unpaid taxes.'" *EC Term of Years Trust v. United States*, 550 U.S. 429, 127 S. Ct. 1763, 1766, (2007) (quoting *United States v. National Bank of Commerce*, 472 U.S. 713, 720 (1985)).  One of the principal tools used by the IRS is a levy "which is a 'legally sanctioned seizure and sale of property.'" *Id.* (quoting Black's Law Dictionary, 926 (8th ed. 2004)); *see also* 26 U.S.C. § 6331(b) ("(t)he term 'levy' as used in this title includes the power of distraint and seizure by any means").  The United States has provided for a **limited waiver of sovereign immunity** for an action brought by one claiming an interest in the property levied: "(i)f a levy has

been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in . . . such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court."  26 U.S.C. § 7426(a)(l); *see also* 28 U.S.C. § 1346(e) (district court has jurisdiction to decide actions brought under 26 U.S.C. § 7426).  LFG's only cause of action is to challenge an IRS levy under section 7426.  *See EC Term of Years Trust*, 127 S. Ct. at 1768 (rejecting argument that the plaintiff could bring both a wrongful levy action and a claim for refund under section 1346(a)(1)).  Indeed, in *United States v. Marshall*, the Ninth Circuit rejected a similar attempt by a claimant who attempted to use Rule 41 to circumvent an IRS levy:

> Marshall's motion under Rule 41 for the return of illegally seized property was simply an attempted end run around the statutory impediments. Once property has been levied upon by the government for payment of taxes, the taxpayer must proceed in the proper civil forum.

526 F.2d at 1355 (citing *United States v. Freedman*, *supra*, 444 F.2d at 1388; and refusing to follow *United States v. Bonaguro*, 294 F. Supp. 750, 754 (E.D.N.Y.1968), *aff'd sub nom. United States v. Dono*, 428 F.2d 204 (2d Cir.), *cert. denied*, 400 U.S. 829 (1970) (government failed to establish that it made a proper jeopardy assessment and thus the Court granted the Rule 41 motion)).  The Ninth Circuit affirmed the district court's opinion and noted "the strong congressional policy against judicial interference in the tax collecting process."  *Id.*

There is no suggestion in either the legislative history or the promulgation of Rule 41(g) that the United States intended for Rule 41(g) to provide an exception to the Internal Revenue Code.  Instead, following existing Ninth Circuit precedent, this Court should deny LFG's Rule 41(g) motion.  In *Kahre*, the Ninth Circuit affirmed the denial of movant's Rule 41(g) motion that moved for the return of payroll funds seized during an arrest.  737 F.3d at 565-66. The court found that Rule 41 was "inapplicable, as the seized funds were applied to [the movant's] tax liabilities pursuant to a notice of levy."  *Id.* (*citing Fitzen*, 80 F.3d at 388–89 ("[A]n IRS tax levy will defeat a Rule 41(e)

motion.... Regardless of whether the defendant owes federal taxes or state taxes, the existence of a tax levy demonstrates a right to possession adverse to that of the defendant.") (citation omitted)).  Because the IRS had already seized the funds, applied them to the movant's tax liabilities, and there was nothing to return.  *Id.*

Furthermore, the Ninth Circuit has found that "[a]n IRS tax levy will defeat a Rule 41(e) motion," because it "demonstrates a right to possession adverse to that of the defendant."  *Fitzen*, 80 F.3d at 388-89 (*citing Freedman*, 444 F.2d at 1388).  In *Fitzen*, the Ninth Circuit expanded its earlier decision in *Freedman* to hold that Rule 41(g) cannot be used to defeat either a federal or state tax levy.  *Id.* (relying also *United States v. Francis*, 646 F.2d 251, 263 (6th Cir.), *cert. denied*, 454 U.S. 1082 (1981)).

In *Freedman*, "the government claimed no right to retain the money on the basis of its original seizure and conceded that appellant would be entitled to a return in appropriate proceedings." 444 F.2d at 1388. However, as a result of a tax levy and despite an argument to the contrary, the Ninth Circuit found that "[t]he fact that the seizure of the fund may have been illegal is of no significance." *Id.* (*citing Ginsberg v. United States*, 408 F.2d 1016, 1017, fn. 1 (9th Cir. 1969); *Simpson v. Thomas*, 271 F.2d 450 (4th Cir. 1959); *Field v. United States*, 263 F.2d 758 (5th Cir. 1959), *cert. denied* 360 U.S. 918 (1959); *Welsh*, 220 F.2d at 236-37)). In rejecting the claimant's claim, the court found that the claimant could not use Rule 41(g) to avoid the requirement of "the filing of a claim for refund or for a credit pursuant to 7422(a)." *Freedman*, 444 F.2d at 1388 (*citing Thompson v. United States*, 308 F.2d 628, 634 (9th Cir.1962); *Owen v. United States*, 277 F.2d 790 (9th Cir. 1960)).  Thus, even though there has been no finding of misconduct, this Court should reject any argument premised on the challenge to the FBI's original seizure.

In LFG's reply, any attempt to distinguish these authorities based upon the fact that the above cases involved a conviction are irrelevant.  [Dkt. 1-2, Ex. 13 (email exchange between undersigned counsel and LFG's counsel regarding Rule 41(g)).]  In this case and consistent with the cases cited above, the FBI surrendered the stock certificate to the IRS pursuant to a notice of levy which LFG could have challenged –

whether there was a conviction or not – under 26 U.S.C. § 7426.  Simply put, neither the language of Rule 41(g) or section 7426 nor the cases cited by the LFG, support its Rule 41(g) motion.  As a result, this Court can dismiss LFG's Rule 41(g) motion, because it has an adequate remedy and should be limited to litigating its wrongful levy claim.

### D. Sovereign immunity bars the expansion of Rule 41(g)

When the FBI and the United States Attorney's Office no longer possess the seized property, the doctrine of sovereign immunity bars the court from expanding the reach of Rule 41(g) to order the return of items now possessed by the IRS.  *See Diaz v. United States*, 517 F.3d 608, 612-13 (2d Cir. N.Y. 2008) ("seized currency should be treated like any other seized property: if the property is no longer available, sovereign immunity bars the claimant from seeking compensation. Fungibility does not furnish a counter-argument; rather it confirms that money seized from Diaz, now that it is disbursed, can no longer be identified or located in the coffers of the government."); *Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) (instructing district court that if the government no longer possesses the seized cash, "[claimant's] motion must be denied because the government cannot return property it does not possess, and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g)"); *Clymore v. United States*, 415 F.3d 1113, 1120 (10th Cir. 2005) (remanding for determination of whether the government still possessed claimant's personal property and cash, and holding as to either item that "sovereign immunity bars monetary relief in a Rule 41[(g)] proceeding when the government no longer possesses the property"); *Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir. 2003) (affirming on other grounds, but stating that "[a] suit for restitution is subject to the defense of sovereign immunity when relief would require disbursement of money from the treasury, even if the government is merely an escrow agent holding funds owned by the plaintiff" (citations omitted)).

Faced with the nine-month statute of limitations for wrongful levy claims and the burden of proof in prevailing on such a claim, LFG argues that this Court should permit it to bring a Rule 41(g) motion since that claim would be subject to the longer statute of limitations contained in 28 U.S.C. § 2401 and the United States would have the burden

of proof.  28 U.S.C. § 2401 to the extent applicable to any claim under Fed. R. Crim. P. 41(g), is simply a "catchall statute of limitations provision."  *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995).  It provides that, with certain exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues" and further requires many tort claims to be "presented in writing to the appropriate Federal agency" before being filed in court.  28 U.S.C. § 2401(a)–(b).  Section 2401 is thus not a waiver of sovereign immunity.  To the contrary, it "acts as a condition on the . . . waiver[s] of sovereign immunity" found in other statutes.  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1049 (9th Cir. 2013); *accord, e.g.*, *Nesovic*, 71 F.3d at 778; *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990).  Because Congress afforded LFG a remedy through section 7426 of the Internal Revenue Code with a shorter statute of limitations and waivers of sovereign immunity must be construed in favor of the government (especially when Congress mandated a smaller statute of limitations and the burden of proof is not with the United States), this Court should not expand the government's waiver of sovereign immunity to include this claim.  S*ee Diaz*, 517 F.3d at 612-613 ("Waivers of sovereign immunity must be 'unequivocally expressed'; the government's consent to be sued is strictly construed and cannot arise by implication.") (citing *United States v. Nordic Village*, 503 U.S. 30, 33-34 (1992)).

### E.  Even if LFG raised a valid claim, this Court should still deny its claim

#### 1.  LFG's claim for wrongful levy is barred by the nine (9) month statute of limitations under 26 U.S.C. § 6532(c)

If the Court reaches the merits of LFG's Rule 41(g) motion, this Court should still reject its claim since the IRS properly levied the FBI and any wrongful levy claim is untimely.[14]  In order to state a claim for wrongful levy, LFG must have brought its claim within nine (9) months after the IRS served its notice of levy.  *See* 26 U.S.C. §§ 7426(h); 6532(c).  26 U.S.C. § 6532(c) provides that "[e]xcept as provided by paragraph (2), no

---

[14] If the Court evaluates the merits of LFG's wrongful levy claim, the United States believes that this supports its argument that LFG has an adequate remedy at law.

suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action." *See also EC Term of Years Trust*, 127 S. Ct. at 1766; *Gordon v. United States*, 227 Ct. Cl. 328, 649 F.2d 837, 844 (Ct. C1. 1981) (holding that § 6532(c) "require(s) levy contests (in this court) to be brought within 9 months of (the) levy"); *United Sand and Gravel Contractors*, 624 F.2d at 739.  Under 26 C.F.R. § 301.6532-3(c), 26 U.S.C. § 6502(b), and 26 U.S.C. § 6335(a), the date of the levy is when notice of the seizure is given "to the owner of the property (or, in the case of personal property, the possessor thereof)…." *See* also 26 C.F.R. § 301.6532-3 (c) (Example 2).  In this case, the stock certificates are "personal property" (as opposed to real property) and the possessor was the FBI.  In arguing that the statute begins to run from date of notice, this Court should reject LFG's attempt to convince this Court to apply the requirements for a levy on real property to a levy on personal property.  [Dkt. 1 at 24-25 (quoting section 6335(a).[15]] Thus, the nine (9) month statute of limitations began to run from the date the IRS served the Notice of Levy (*i.e.*, on or around July 2, 2013), and expired before LFG brought its claim before the bankruptcy court (and most certainly expired prior to the filing of this Rule 41(g) motion on July 2, 2015).  [Stev. Decl. at ¶ 6.]

> Congress intended by this statute of limitations to quickly resolve these disputes:
>
> The obvious reason for a short statute of limitations is to resolve doubts concerning the status of the taxpayer's account swiftly. If someone else successfully claims property already credited against the taxpayer's tax liability, the United States must look to other assets of the taxpayer to satisfy the taxpayer's liability. I.R.C. § 6532(c) protects the legitimate

---

[15] While LFG also cites section 6335(b), that section does not apply since it governs the notice of sale.  [Dkt. 1 at 25.]  In this case, LFG attached both the July 2014 and December 2014 Notices of Sale which were sent to LFG.  [Dkt. 1-2, Exs. 6 & 9.]  Also, LFG's reliance upon *Goodwin* and *Reece* is misplaced since both cases involved notice to owners of real property (as opposed to personal property) under section 6335(a).  *See Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir. 1991): *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975).  On the one hand, LFG requests that section 6335(a) be read literally and then on the other hand it wants to read a requirement in the statute that the IRS either provide owners of personal property with personal notice or for the IRS to leave it at their usual place of abode.  LFG cannot have it both ways.

interest of the United States in requiring other claimants of the seized property to bring their claims quickly.

*United Sand and Gravel*, 624 F.2d at 739; *see also EC Term of Years Trust*, 127 S. Ct. at 1766 (reviewing the legislative history and stating that "(t)he demand for greater haste when a third party contests a levy is no accident"); *United Sand and Gravel*, 624 F.2d at 739 (wrongful levy suit under 26 U.S.C. § 7426 is the "exclusive remedy" for non-taxpayers wishing to challenge a levy); *Norem v. Norem*, Civil Action No. 3:07-cv-0051, 2008 WL 2245821, at *6-*7 (N.D. Tex. June 2, 2008) (same).[16]  Because LFG's wrongful levy claim is untimely and Mazur's liabilities remain outstanding, this Court should conclude that the IRS can retain the stock certificate.

## 2. Allowing the IRS to sell the stock certificate would not violate LFG's due process rights

Based upon the facts and circumstances of this case, LFG asserts that finding that the nine (9) month statute of limitations has expired would violate its due process rights. [Dkt. 1 at 25-26.]  LFG's argument should be rejected.  Initially, as stated above, the IRS satisfied section 6335(a) when the IRS served notice of the levy upon the FBI (the agency that possessed the stock certificates).  *See* 26 C.F.R. § 301.6532-3 (c) (Example 2); *see also Winebrenner*, 924 F.2d at 855 ("[u]pon whom service of the notice of seizure must be made in order to commence the running of the statute of limitations under Section 6532(c) thus may depend upon the type of property seized").  In its Rule 41(g)

---

[16] While LFG attached a letter dated July 29, 2014 that purports to satisfy the requirements of 26 U.S.C. § 6532(c), it was sent more than nine (9) months after the IRS served the levy.  [Dkt. 1-2, Ex. 8.]  Furthermore, LFG's letter did not extend the statute of limitations since it does not satisfy the requirements contained in 26 C.F.R. § 301.6532-3(b)(2).  S*ee also Winebrenner v. United States*, 924 F.2d 851, 1991 U.S. App. Lexis 873 (9th Cir. Jan. 23, 1991) *overruled on other grounds in WWSM Investors v. United States*, 64 F.3d 456, 458 (9th Cir. 1995), and revisited in *Fidelity and Deposit Co. v. City of Adelanto*, 87 F.3d 334 (9th Cir. 1996).  Furthermore, the letter only states LFG may have a claim, but does not state that it does.  [Dkt. 1-2, Ex. 8.]  In footnote 13, relying upon 26 C.F.R. § 301.6343-2(c), LFG argues that the IRS had a duty to tell it if its letter was incorrect.  Since LFG failed to mail a timely letter within the time provided and the IRS's November 2014 letter cannot provide it with additional rights, section 301.6343-2(c) cannot save LFG's claim.  *See De Gregory v. United States*, 395 F. Supp. 171, 175 (E.D. Mich. 1975).

motion, relying primarily on a Supreme Court case involving the service of process via notice of publication, LFG alleges that only personally serving the Notice of Levy upon the FBI violates its due process rights.  In *Gordon*, the Federal Court of Claims rejected a similar constitutional due process argument and concluded that section 6532(c)

> strikes a reasonable balance between claims under the Fifth Amendment and the taxing power.  The obvious congressional concern that allowing such suits after 9 months would handicap efforts to collect the tax cannot be discounted. . . .  Further, those who claim an interest in property are under some duty to discovery contraventions of that interest, and if need be, to defend that which they claim.

649 F.2d at 845 (relying upon requirement of due diligence pronounced in *Mullane* (the case LFG relies upon)[17]).  In rejecting this constitutional argument, the court concluded that "[w]e perceive no constitutional infirmities in a requirement that Gordon's claim be asserted within 9 months of levy, and we so hold."  649 F.2d at 845; *see also id.* ("[t]he statute is not tolled merely because Gordon was unaware of his claim.  The claim was discoverable and the Government made no attempt to obscure it . . . .  Nor is the statute tolled by plaintiff's incarceration.") (citations omitted).

Similarly, in *Douglas v. United States*, 562 F. Supp. 593 (S.D. Ga. 1983), *aff'd* 723 F.2d 919 (11th Cir. 1983), the court rejected a claim that due process required notice to the account owner of a bank account rather than personal service to the financial institution as specified in 26 U.S.C. § 6335(a).  In reaching this conclusion, the court distinguished *Mullane* and its progeny, because those cases involved notice by publication and that situation was different than a notice of levy served upon a financial institution.  *See id.* at 596-97 (no violation of due process since person should monitor his or her account even without receiving notice of the levy).  Relying upon *Gordon* and other cases including *Dieckmann v. United States*, 550 F.2d 622 (10th Cir. 1977), the

---

[17] "It is the part of common prudence for all those who have any interest in (a thing) to guard that interest by persons who are in a situation to protect it."  *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 316 (1950) (quoting *The Mary*, 13 U.S. (9 Cranch) 126, 144 (1815)).

20

court dismissed plaintiff's untimely claim and held that "the statutory framework within which the IRS levied upon the plaintiff's account, including the provisions relating to notice, adequately protected the plaintiff's right to due process of law." *Id.* at 597; *see also De Gregory*, 395 F. Supp. at 174 (noting that previous courts have rejected constitutional challenges to the levy procedure and stating that "*[i]n the face of an admittedly harsh statutory scheme designed to permit prompt recover of delinquent taxes with a minimum of third party intervention, the claimant's only recourse apparently is to vigilant self-protection of his interests by pursuit of his debtor*") (emphasis added). This Court should reach a similar conclusion and reject LFG's claim.

In this case, LFG failed to protect its interest in the remaining 50 percent of the shares and its lack of diligence, as opposed to the alleged failure of the IRS to comply with the applicable requirements, is the reason for its untimely claim. Because the IRS complied with the statutory requirements and 26 U.S.C. § 6335(a) does not require personal service, the Court should conclude that the United States has a cognizable reason for retaining the stock certificate since LFG failed to make a timely wrongful levy claim and that the denial of its claim would not violate the Due Process Clause of the Fifth Amendment for the same reasons articulated by the courts referenced above.

### 3.     Mazur's liabilities remain outstanding

Generally, 26 U.S.C. § 6502(a)(1) allows the IRS ten (10) years from the date of assessment to collect a taxpayer's outstanding tax liabilities. In this case, the IRS assessed Mazur's 1982 through 1987 tax liabilities during May through July 2002. [Dkt. 1-2, Ex. 6 (nominee NFTL); Dkt. 1 at 18-19.] In the complaint, LFG acknowledges that Mazur's bankruptcy suspended the United States' assessment and collection deadlines. [Dkt. 1 at 17; *see also* 26 U.S.C. § 6503(h)(2).] In particular, section 6503(h) provides -

The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment

or from collecting and

      (1) for assessment, 60 days thereafter, and

      (2) for collection, 6 months thereafter.

In Mazur's case, his 1993 bankruptcy tolled the ten-year collection statute from the date of the assessments until at least six months after October 2006 (the date of his discharge under 11 U.S.C. § 727).  Thus, more than four-and-a-half  years must be added onto the collection statute, and Mazur's liabilities remain outstanding.  *See In re Taylor*, 81 F.3d 20, 23 (3d Cir. 1996) ("6503(h) of the Internal Revenue Code suspends the tax collection limitation period while the debtor's assets are in the custody or control of any court and for an additional six months after dismissal of the debtor's case"); *Gilliam v. Hovis (In re Marine Energy Sys. Corp.)*, 430 B.R. 348, 356-57 (D.S.C. 2010) (rejected argument that the tolling provision of section 6503(h)(2) does not apply where "the IRS was not barred from collecting via levy from property acquired post-petition"); *Severo v. Comm'r*, 129 T.C. 160, 168-169, 2007 U.S. Tax Ct. LEXIS 36, 18-19, 129 T.C. No. 17 (T.C. 2007) (section 6503(h)(2) tolls statute of limitations, even if automatic stay only prevents the collection of taxes from pre-petition assets and would permit IRS from collecting from post-petition assets, until the stay is lifted as provided for in 11 U.S.C. § 362(c)); *United States v. Doe*, 438 F. Supp. 2d 796, 802-803 (S.D. Ohio 2006) (held that pursuant to 26 U.S.C. § 6503(h), ten-year collection statute extended from the date of the debtor's Chapter 12 bankruptcy filing until the dismissal, plus six months); *In re Cowen*, 207 B.R. 207, 209 (Bankr. E.D. Cal. 1997) (relying on section 6503(h) to find that "the period to assess or collect the taxes is suspended for the period a bankruptcy petition is pending plus an additional six months").

      Taking issue with the government's position that the statute of limitations expires in 2017, LFG asserts that the August 31, 1998 Order removed any prohibition on the collecting of Mazur's assets.  LFG simply misinterprets the bankruptcy court's Order.  Initially, the August 31, 1998 Order clearly states that "Tax Court decision will determine the amount of the IRS claim, but Bankruptcy Court to determine priority in assets."  [Dkt. 1-2, Ex. 17; *see also* Dkt. 1-2, Ex. 18 (Dkt. 129 – "ORDER granting [in

whole or in part] motion for relief from automatic stay ACTION IN NON-BANKRUPTCY FORUM" and the docket from Mazur's bankruptcy listing 114 entries after the August 31, 1998 order that include fee applications, the request to split the bankruptcy estate in half between Mr. and Mrs. Mazur, additional motions related to the automatic stay and the filing of an inventory of the estate in the periods after the August 1998 order).] LFG contends that, because the parties' entered stipulation allowed the resumption of Mr. and Mrs. Mazurs' Tax Court proceedings and the ultimate assessment of tax liabilities **four** years after the August 31, 1998 Order, the automatic stay was "terminated" under 11 U.S.C. § 362(a). [Dkt. 1 at 21 (discussing differences between terminating, annulling, conditioning and modifying under section 362(a)).] While the Order lifted the automatic stay as to the assessment of Mazur's tax liabilities, it clearly did not terminate it as to the IRS's collection from his pre-petition assets.

Nowhere does the Order specifically permit the IRS to begin collecting these unassessed liabilities, especially when they could not be assessed until the conclusion of the Tax Court litigation. At best, and as made clear by the clear language of paragraph 3, the Order was a modification or conditioning of the automatic stay especially since that paragraph was "pursuant to relief from the automatic stay" and does not articulate the specific relief. Similarly, if the IRS was permitted to collect Mazur's assets, there would be no reason for the bankruptcy court to determine who was entitled to those assets based upon the bankruptcy priorities, especially when the assessments did not occur until almost **four** years after the Order. Furthermore, this interpretation is consistent with the parties' Stipulation that the trustee was permitted to claim that assets were a part of the bankruptcy estate and the parties agreed to submit to the jurisdiction of the bankruptcy court to determine ownership and/or priority. [Dkt. 1-2, Ex. 16 at 6.] Simply put, this Court should reject LFG's interpretation, because it is inconsistent with the bankruptcy court's order and would undermine the established policy that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Richmond v. United States*, 172 F.3d 1099, 1101 (9th Cir.1999) (internal citation omitted).

The United States' interpretation is further supported by the title of the stipulation – "Stipulation Between the United States of American and Chapter 7 Trustee to Pursue Pending Actions in Tax Court," which was a requirement for the assessment and did not mention collection.  Finally, the restrictions contained in the August 31, 1998 Order were not lifted until the bankruptcy court entered the discharge on April 12, 2006.[18] Clearly, the bulk of LFG's argument that the order completely terminated the automatic stay as to the IRS and permitted it to collect from Mazur's assets as it saw fit, is not supported by the Order.  For example, following the assessment of Mazur's tax liabilities, the Order precluded the United States from levying the bankruptcy estate's bank account, even though the money was comprised of Mazur's pre-petition assets and subject to the bankruptcy court's determination of the respective administrative, secured, priority and general unsecured claims.  [*Cf.* Dkt. 1 at 22 (conceding that based upon applicable law relief from the automatic stay would not have terminated neither (i) "the claim administration process" nor (ii) the bankruptcy court's jurisdiction to determine whether property subject to a lien "remains property of the bankruptcy estate").]  Thus, even following the assessment of the liabilities and in accordance with the Bankruptcy Code, the pre-petition assets remained under bankruptcy court control and the IRS was only entitled to receive payments in accordance with the bankruptcy priorities.

While the United States admits that, following the assessment of the liabilities, the IRS could have collected from Mazur's *post-petition assets* that possibility does not limit the applicability of 26 U.S.C. § 6503(h).  Because the United States was prohibited from collecting from Mazur's *pre-petition assets* and the Bankruptcy Court retained jurisdiction to decide claims to Mazur's pre-petition assets, the collection statute did not

---

[18] Since LFG does not argue in the alternative, LFG appears to concede that if the limitations date is measured from the date of discharge then Mazur's outstanding tax liabilities for tax years 1982 through 1987 and 1991 would remain outstanding. Furthermore, LFG concedes, as it must, that Mazur has liabilities that remain outstanding, even if the statute of limitations for the bulk of the liabilities has expired. For these liabilities,  LFG cites no authority that would allow this Court to order the transfer of any amounts previously collected to be applied towards these liabilities. Indeed, any such request would be barred by the Anti-Injunction Act and would also not be permitted under Rule 41(g).

begin to run until ten (10) years following the entry of the Court's 2006 discharge order. *See, supra*, *Taylor*, 81 F.3d at 23; *Gilliam*, 430 B.R. at 356-57; *Severo*, 129 T.C. at 168-169; *Doe*, 438 F. Supp. 2d at 802-803; *In re Cowen*, 207 B.R. at 209.

**Thus,** Mazur's1993 bankruptcy tolled the ten-year collection statute from the date of the May through October 2002 assessments until at least six months after October 2006 (the date of his discharge under 11 U.S.C. § 727). More than 4.5 years must be added onto the ten year collection statute, and Mazur's liabilities remain outstanding as indicated in the IRS's NFTL and Notice of Levy. *See also* 26 U.S.C. §§ 6502(a)(1); 6503(h)(2).

## V. Conclusion

Based on the foregoing, the United States requests the Court deny LFG's Rule 41(g) motion and allow the bankruptcy court to proceed with the consideration of the United States' motion to dismiss LFG's adversary complaint and bankruptcy proceeding.[19]

Dated: September 14, 2015                    Respectfully submitted,

                                             EILEEN M. DECKER
                                             United States Attorney
                                             SANDRA R. BROWN
                                             Assistant United States Attorney
                                             Chief, Tax Division


                                              /s/ Benjamin L. Tompkins
                                             BENJAMIN TOMPKINS
                                             Assistant United States Attorney
                                             JOLENE TANNER
                                             Assistant United States Attorney

                                             Attorneys for
                                             UNITED STATES OF AMERICA

---

[19] To the extent, this Court determines that LFG can state a claim under Rule 41(g), then the Court should require the parties to file a scheduling order pertaining to the remaining issues in this case, including setting a dispositive motions deadline.