Daniel Weintraub - Bar #132111
James R. Selth - Bar #123420
Elaine V. Nguyen - Bar #256432
WEINTRAUB & SELTH, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: elaine@wsrlaw.net

Attorneys for Moving Party,

LONDON FINANCE GROUP, LTD.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>SHERMAN MAZUR, et al.,<br><br>Defendants. | Case No.  2:15-cv-05042-SVW<br><br>Hon. Stephen V. Wilson<br><br>**REPLY OF LONDON FINANCE GROUP, LTD. TO UNITED STATES OF AMERICA'S OPPOSITION TO MOTION FOR RELEASE OF PROPERTY SEIZED PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)**<br><br>Hearing:<br>Date:       October 5, 2015<br>Time:       1:30 p.m.<br>Place:      Courtroom 6<br>             312 No. Spring St.<br>             Los Angeles, CA 90012 |

TO THE COURT, UNITED STATES OF AMERICA AND ALL

OTHER PARTIES TO THIS ACTION:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................2

ARGUMENT ................................................................................................................3

  A. THE TAX Claims Against Mazur are Time-Barred ....................................3

  B. Adequate Remedy at Law..............................................................................7

  C. LFG's Wrongful Levy Claim is Not Time-Barred ......................................8

    1.  LFG Timely Filed Its Administrative Claim and Its Complaint ...............8

    2.  Here, Equitable Tolling Obviates the Bar of the Statue of Limitations ................................10

    3.  Notice to the FBI Does Not Pass Constitutional Muster ...........................13

    4.  The Notice of Levy is Inadequate Under I.R.C. Section 6335.................15

  D. LFG Owns the Shares, Not Mazur ..............................................................17

  E. Sovereign Immunity Does Not Bar LFG's Relief for Turnover of the Shares ...........................20

  F. IRS's Possession of the Shares Does Not Render This Motion Moot .........................20

  G. LFG's Bankruptcy Estate Defeats any Hidden Interest of Mazur ..............................21

CONCLUSION ..........................................................................................................22

## **TABLE OF AUTHORITIES**

### **Cases**

*Bonacci v. United States*, 864 F. Supp. 1086, 1087 (D. Utah 1993)....................................... 15

*Catalano v. Commissioner*, 279 F.3d 682, 686-87 (9th Cir. 2002) ...................................... 6

*Dieckmann v. United States*, 550 F.2d 622, 623 (10th Cir. 1977) ....................................... 14

*George F. Harding Museum v. U.S.*, 674 F. Supp. 1323, 1326 (N.D. Ill. 1987) ...................... 7

*Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir. 1991 ........................................ 16

*In re Five Boroughs Mortgage Co.*, 176 B.R. 708, 713 (Bankr. E.D.N.Y. 1995) ................... 6

*Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 ..................................... 14

*Naton v. Bank of California*, 649 F.2d 691.................................................................... 10

*Navarro v. Mukasey*, 518 F.3d 729, 734 (9th Cir. 2008).................................................... 6

*Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962)............................................ 14

*Sessler v. United States*, 7 F.3d 1449, 1451 (9th Cir. 1993)............................................... 8

*Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990).......................................................... 10

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1208 n.7 (9th Cir. 1995).......... 10, 11, 12, 13

*United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 783 (5th Cir. 2006)........ 7

*Volpicelli v. United States*, 777 F.3d 1042, 1047 (9th Cir. Nev. 2015) ................................ 10

### Statutes

11 U.S.C. § 362(a) ...................................................................................................... 5

11 U.S.C. § 541(a) ...................................................................................................... 5

19 U.S.C. § 1514 ......................................................................................................... 12

26 C.F.R. § 301.6343-2(c) ............................................................................................ 9

26 C.F.R. § 301.7426-1(b)(1)(iv)(a) .............................................................................. 8

26 U.S.C. § 6503(h) ..................................................................................................... 4

26 U.S.C. § 6532(c)(1) ................................................................................................. 14

26 U.S.C. §§ 6532(c) and 7246(h)................................................................................. 8

26 U.S.C. §6532(c) ...................................................................................................... 9

ii.

I.R.C. § 6335 ............................................................................................... 13, 14, 15

I.R.C. § 6502 ................................................................................................... 15

I.R.C. § 7426 ................................................................................................... 15

I.R.C.§ 6335(a) ............................................................................................... 13

I.R.C. §6532(c) ................................................................................................. 9

Moving Party London Finance Group, Inc. submits its reply to the United States of America's Opposition to London Finance Group, Ltd.'s Motion for Release of Property Seized Pursuant to Federal Rule of Criminal Procedure 41(g) (Dkt. No. 8) (the "Opposition"):

**INTRODUCTION**

By this proceeding, London Finance Group, Inc. ("LFG") seeks the return of 718,494 shares of the common stock of Revolution Lighting Technologies, Inc. (the "Shares")[1].  The United States of America (hereinafter "the Government") seized the Shares from LFG's offices, in connection with a now-dismissed criminal prosecution of its president, Ari Kaplan ("Kaplan") and eight other persons.[2] Despite the dismissal, the Government claims a right to retain and then levy on the Shares to satisfy the tax liability of one of the other dismissed defendants, Sherman Mazur ("Mazur"), based on the Government's claims that LFG is Mazur's nominee. The Government's assertions are unfounded and the Court should order turnover of the Shares to LFG forthwith.

First.  The Government seeks to seize LFG's property based on Mazur's time-barred tax obligations. Even if all the issues raised by LFG, as summarized below, were to be resolved in favor of the Government, the ten-year statute of

---

[1]  LFG has also filed a Motion to Withdraw the Reference of the adversary proceeding filed in its Chapter 11 bankruptcy case.  The Motion to Withdraw the Reference was assigned to the Honorable David O. Carter.  The Court declined to transfer this the Motion to Withdraw the Reference to this Court to be heard with the pending Motion under Federal Rule of Criminal Procedure 41(g) in Case No. 2:13-cr-00062-SVW (United States v. Mazur, et al.), Plaintiff respectfully notes that the Court's reference in the Order re Transfer to all defendants in the criminal case having entered guilty pleas was in error.  The Court lists Case No. 2:13-cr-00048-SVW (United States v. Possino, et al.) as the proposed related case in his Order re Transfer.  That case was a companion case in front of the Court with different defendants in which guilty pleas were entered.  In Case No. 2:13-cr-00062-SVW (United States v. Mazur, et al.), the case which Plaintiff sought to relate, charges against all defendants were dismissed by the United States.

[2]  *United States of America v. Sherman Mazur, et al*, Case No.  2:13-cr-00062-SVW (C.D. Cal.).

limitations would still bar collection of Mazur's underlying tax obligation. Accordingly, if the Court agrees that the underlying tax claim is barred, than it need not address any of the other issues and can simply order return of the shares to LFG forthwith.

Second.  The Government improperly seized the Shares and should have returned the Shares once it decided not to litigate matters relating to the issuance of the Shares in the criminal proceeding, as evidenced by AUSA Bowman's June 11, 2013 e-mail correspondence to Marc Harris, Mr. Mazur's attorney, and AUSA Bowman's March 28, 2014 e-mail correspondence to Jason de Bretteville, Mr. Kaplan's criminal defense attorney.[3]

Third.  The Government's notice was purposefully defective. Rather than give formal and proper notice to LFG of its intent to levy on the Shares, the Government chose to notice itself.  The IRS gave notice of its levy to the FBI, despite knowing full well how to contact LFG's President, Kaplan, who was then under house arrest.  Moreover, LFG's challenge to the levy is timely.

Fourth.  The Government's levy seeks to satisfy an obligation purportedly owed by Mazur, not LFG.  LFG, however, is not Mazur's nominee and in fact owes separate obligations to various other creditors.

**ARGUMENT**

**A.    THE TAX CLAIMS AGAINST MAZUR ARE TIME-BARRED.**

As the Opposition makes plain, the Government wants to distract the Court by making this case about Mazur.  Opp. at 1:7-10.  Despite spending considerable effort to paint Mazur as a felon, however, the Government conspicuously omits any mention of its misconduct in the criminal proceeding that led to the dismissal of all criminal charges in that proceeding, including the charges against Mazur. Mazur's

---

[3]    **Exhibit 5** (Bates No. 70).

22-year old conviction, sentence and prison time are irrelevant to this case. The only relevance of Mazur to this case is whether the Government can still enforce his tax liability, and as discussed below, the Government cannot.

The Government concedes that the ten-year statute of limitations on the collection of tax liabilities under 26 U.S.C. § 6503(h) begins to run six months after the IRS was freed from doing so by virtue of any stay or injunction imposed by the Bankruptcy Code. Opp. 21:22-22:3. The Government contends that the statute for collections begins to run six months after Mazur received his discharge. Mazur received his discharge on April 12, 2006. *See* **Exhibit 18**[4] (Bates No. 209). Thus, under the Government's view, the statute would run out on October 12, 2016.[5] Opp. 22:23-24. The Government is wrong.

The Government's position ignores the fact that the August 31, 1998 order lifting the automatic stay (the "Lift Stay Order") (**Exhibit 17** (Bates No. 186-190)) and the "Stipulation Between the United States of America and Chapter 7 Trustee to Pursue Pending Actions in Tax Court" (the "Stipulation") (**Exhibit 16** (Bates Nos. 178-184)) freed the Government from any restraint imposed by the Bankruptcy Code on the assessment or collection of Mazur's taxes. Motion at 19:22-23:18. The Lift Stay Order, which the Government drafted, specifically provided that the stay was "Terminated" as to Mazur and Mazur's estate:

//

//

---

[4]   All references in **BOLD** refer to the Exhibits attached to LFG's *Motion For Release of Property Seized Pursuant to Federal Rule of Criminal Procedure 41(g) [related to 2:13-cr-00062-SVW]* filed by LFG. (the "Motion") (Dkt. No. 1)

[5]   The Government seems to think that the discharge was entered in October 2006. Opp. at 22:5. However, this simply appears to be a computational error because Mazur's discharge order clearly was entered on April 12, 2006. **Exhibit 18** (Bates No. 209). The error makes no difference for the analysis of whether the statute began to run in 2002 when Mazur's taxes were assessed.

"As to Movant (*i.e.*, the United States of America), its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is: **Terminated as to [Mazur] and [Mazur]'s estate**." (Emphasis added). (**Exhibit 17** (Bates No. 186))

This language in the Lift Stay Order unequivocally removed on August 31, 1998 any and all restraints imposed by the Bankruptcy Code on the Government's right to seize Mazur's assets.

In its Opposition, the Government attempts to reinvent the language of the Lift Stay Order and the Stipulation to find that the Government could only assess Mazur's taxes, but not collect them.  Opp. at 23:10-12.  The Government's arguments, however, are nonsensical and unavailing.  For example, the Government argues that the Bankruptcy Court's reservation of a right to determine priorities somehow supports its tortured construction of the Lift Stay Order:

"Similarly, if the IRS was permitted to collect Mazur's assets, there would be no reason for the bankruptcy court to determine who was entitled to those assets based upon the bankruptcy priorities, especially when the assessments did not occur until almost four years after the Order." Opp. at 23:17-20

But the reservation of the Bankruptcy Court to determine priorities has nothing to do with whether the IRS could collect on its claims. Rather, this reservation simply preserved the Bankruptcy Court's ability to resolve *potential* disputes pertaining to the estate arising from the IRS's efforts to collect against Mazur's assets.

For example, if the IRS seized property that Mazur acquired *before* bankruptcy that was property of the estate under 11 U.S.C. § 541(a) or proceeds of such property, then the Trustee could claim that said property should be used to pay claims with a higher priority than the IRS's tax claims.[6]  In contrast, if the IRS

---

[6]     Under the Bankruptcy Code, administrative claims allowed under 11 U.S.C. § 503(b) have a higher priority than a debtor's pre-petition tax claims under 11 U.S.C. §§ 507(a)(2) and (9).

seized property of Mazur that he acquired *after* the entry of an order for relief in his bankruptcy, that property would not be property of the estate.[7]  In that case, the Trustee would have no claim to it and the IRS could retain all of it.  The reservation of jurisdiction in the Bankruptcy Court to determine priorities has no bearing on whether the parties agreed that the IRS could seize Mazur's assets after the entry of the Lift Stay Order.  In sum, the reservation simply dealt with potential issues arising from the IRS making a seizure against property in which the Trustee asserted a claim on behalf of the estate.

This reservation of jurisdiction (as opposed to control over the assets) coincides with a well-established body of law that relief from stay affects neither (i) the claim administration process to determine the relative amount and priority of claims, nor (ii) whether the property subject to the lien of the party obtaining relief remains property of the bankruptcy estate.  *In re Five Boroughs Mortgage Co.*, 176 B.R. 708, 713 (Bankr. E.D.N.Y. 1995) (claims administration); *Catalano v. Commissioner*, 279 F.3d 682, 686-87 (9th Cir. 2002) ("Although the property may pass from the control of the estate [as a result of lifting the stay], that does not mean that the estate's interest in the property is extinguished.")

Likewise, the IRS's assessment four years later does not speak to the IRS's intent at the time they made the Stipulation.  *Navarro v. Mukasey*, 518 F.3d 729, 734 (9th Cir. 2008) ("A contract must be so interpreted as to give effect to the mutual intention of the parties ***as it existed at the time of contracting,*** so far as the same is ascertainable and lawful.") (emphasis added).  To the contrary, given Mazur's criminal record, it strains credulity that the IRS intended to propose any

---

[7]    Once a chapter 7 case is commenced, "two estates are created -- the chapter 7 bankruptcy estate, and a new, post-petition estate [and] [i]nto this post-petition estate goes 'property which the debtor receives, after filing.'" *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1424, 1432 (M.D. Ala. 1996).  Even though the tax claims were pre-bankruptcy claims, they were non-dischargeable under 11 U.S.C. 523(a)(1)(C).  As such, the Government was free to seize Mazur's post-bankruptcy assets to satisfy them.

gratuitous restraint on the collection of Mazur's assets.  Indeed, there is no indication that the Government intended to or in fact did give up its right to make a jeopardy assessment to gain immediate control of Mazur's assets while his taxes were being assessed.  *George F. Harding Museum v. U.S.*, 674 F. Supp. 1323, 1326 (N.D. Ill. 1987) ("Jeopardy assessments pursuant to [I.R.C.] § 6861 are … usually employed to prevent persons operating outside the law from laundering or concealing large amounts of cash in order to escape their tax liabilities.").  .

Indeed, nothing in the Stipulation forbids such an action by the IRS.  In fact, it contemplates that the IRS could take such a step.  The plain language of the Stipulation shows that the Government and the Trustee expected the Government to start "collecting" on Mazur's tax debt forthwith:

> "The parties stipulate that any ***attachment*** of funds and/or property of the debtor[s] [Mazur and Michelle] by the Internal Revenue Service pursuant to relief from the automatic stay …"  (**Exhibit 16** (Bates No. 183))

The term "attachment" certainly means "collection."  *United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 783 (5th Cir. 2006) ("to 'attach' is 'to take or seize under legal authority.")   Having agreed that the IRS could ***attach*** assets, it is clear that there was no impediment to the IRS's ability to collect Mazur's assets after entry of the Lift Stay Order

**B.    ADEQUATE REMEDY AT LAW**.

The Government claims that if LFG has an adequate remedy at law, LFG's claim under Rule 41(g) is barred.  Opp. 10:3-18.  The Government also claims that LFG's adequate remedy at law is its wrongful levy claim.  Opp. at 12:21-16:4.  The Government claims the statute of limitations bars that wrongful levy claim.  Opp. at 17:20 to 19:10.

The wrongful levy claim is <u>not</u>, however, as the Government suggests, part of this Motion.  Opp. 17, n. 14.  Nevertheless, it seeks to argue the merits of that

claim in the Opposition.  Opp. at 17:20 to 19:10.   In any event, to the extent the issue of whether the statute of limitations bars the wrongful levy claim is properly before the Court, LFG submits the following argument to demonstrate its wrongful levy claim is not barred.[8]

## C.   LFG'S WRONGFUL LEVY CLAIM IS NOT TIME-BARRED.

The Ninth Circuit defines a levy as "wrongful" if, *inter alia*, "the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter." 26 C.F.R. § 301.7426-1(b)(1)(iv)(a).  A third party may maintain a wrongful levy action "where the government had no business at all interfering with the third party's property right." *Sessler v. United States,* 7 F.3d 1449, 1451 (9th Cir. 1993).  The claims in the Complaint fall squarely into this definition. The Government has levied, or attempted to levy, upon property of LFG in which Mazur has no *legal* interest.

### 1.   LFG Timely Filed Its Administrative Claim and its Complaint.

The Government claims the statute of limitations in 26 U.S.C. §§ 6532(c) and 7246(h) began to run on or about July 2, 2013 when the IRS served a "notice of levy" on the Shares upon the FBI only, but not LFG or its representative Kaplan.  Opp. 18:11-16.  However, the November 20, 2014 letter (**Exhibit 8 (Bates No. 96)**) plainly contradicts that allegation.  It states:

> We have considered your administrative claim for return of
> property belonging to Sherman Mazur which was levied by the

---

[8]   Ordinarily, the statute of limitations bars a claimant's adequate remedy at law, and the claimant cannot save its equitable claim with a longer statute of limitations if the equitable claim is based on the same set of facts as the legal claim.  Cf. *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Here, the facts supporting LFG's equitable claim for the return of the Shares under Rule 41(g), i.e., the dismissal of the criminal proceeding and the wrongful seizure of the shares by the FBI, differ from the ones supporting the wrongful levy claim, i.e., the seizure of the Shares by the IRS and its failure to give proper notice of same.  Thus, this rule should not apply; and if the wrongful levy claim is barred by the statute of limitations, LFG has no adequate remedy at law.

Internal Revenue Service on *01/31/2014*.  This letter is to advise you of the disallowance of your administrative claim.

Your claim fails to establish that the levied property belongs to someone other than Sherman Mazur or that you have an interest in the property that is superior to the lien of the United States.

You may have a right to contest this determination in the United States District Court.  Internal Revenue Code §6532(c) for the time you have to file a suit.  (Emphasis added).

Thus, by the IRS' admission, the levy occurred on January 31, 2014.[9]  Pursuant to 26 U.S.C. §6532(c), LFG had (i) until October 31, 2014 to file its administrative claim for a return of the shares with the IRS and (ii) until May 20, 2015 to file its complaint to seek return of the Shares.

LFG met the first requirement when it filed its administrative claim with the IRS on July 29, 2014. (**Exhibit 4** (Bates Nos. 70-72)).  The November 20, 2014 letter (**Exhibit 8**) clearly shows that the Government considered and acted on LFG's July 29, 2014 claim.  Notwithstanding this clear record, the Government now asserts in the Motion that the administrative claim was either untimely or defective because it did not comply with 26 C.F.R. § 301.6343-2(c).  Opp. 19:21-28.  The Government has waived this defect by failing to advise LFG of any defects within 30 days and by acting on the July 29, 2014 claim as demonstrated by **Exhibit 8**.  See *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1208 n.7 (9th Cir. 1995) ("A request for the return of property must generally be filed with the office that imposed the levy, the request 'will be considered adequate' unless the IRS notifies the claimant of any inadequacies within 30 days of the date of receipt of the request.").

---

[9]   Notices and certificates similar to **Exhibit 8** are sufficient, self-authenticating evidence.  See, e.g., *United States v. Bisbee*, 245 F.3d 1001, 1006 (8th Cir. 2001).  IRS tax communications of taxpayer liability are presumed correct.  See *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242, 122 S. Ct. 2117, 153 L. Ed. 2d 280 (2002).

1

**2.    Equitable Tolling Obviates the Bar of The Statute Of Limitations.**

2

3      In the Ninth Circuit, the statute of limitations for wrongful levy in I.R.C. §

4   6532(c) is subject to equitable tolling.  *Volpicelli v. United States*, 777 F.3d 1042,

5   1047 (9th Cir. Nev. 2015); *Supermail Cargo, Inc. v. United States*, 68 F.3d at

6   1206-07.  Where that doctrine applies, it often requires evidence outside the

7   pleadings.  As such, it "is not generally amenable to resolution on a Rule 12(b)(6)

8   motion."  Id. ("A motion to dismiss based on the running of the statute of

9   limitations period may be granted only if the assertions of the complaint, read with

10   the required liberality, would not permit the plaintiff to prove that the statute was

11   tolled.  In fact, a complaint cannot be dismissed unless it appears beyond doubt

12   that the plaintiff can prove no set of facts that would establish the timeliness of the

claim.") (citations and quotations omitted).

13      Here the record provides an ample basis for equitable tolling.  Equitable

14   tolling "focuses on plaintiff's excusable ignorance of the limitations period and on

15   lack of prejudice to the defendant."  *Naton v. Bank of California*, 649 F.2d 691,

16   696 (9th Cir. 1981); *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990)

17   ("Equitable tolling applies when the plaintiff is unaware of his cause of action").

18   Here, as Kaplan, LFG's principal, was under house arrest, there can be no doubt

19   that LFG had no way to know the IRS (as opposed to the FBI) had seized the

20   Shares ostensibly to satisfy the Government's claims against Mazur until the

21   USAO responded to Kaplan's counsel's demand for their return in April, 2014.

22   (**Exhibit 5** (Bates Nos. 74-77))

23      AUSA Bowman's June 11, 2013 e-mail makes plain that while Kaplan was

24   under house arrest, the Government had not given Kaplan any proper notice of its

25   intent to levy:

26          "Mr. Kaplan has asked that we return the certificate. While we have
           reason to believe that there was some effort to manipulate the stock of

27

28

Seesmart, we have decided not to litigate the issue and instead return a portion of the shares to him."

**Exhibit 6 to Opposition** (Document 8-4 Filed 09/14/15 Page 68 of 80 Page ID #:604)

Further, in this same e-mail AUSA Bowman stated

"…we have been planning on having this certificate broken into separate certificates, with half of the shares going to Mr. Kaplan and the other half going to London Finance Group."

**Exhibit 6 to Opposition** (Document 8-4 Filed 09/14/15 Page 68 of 80 Page ID #:604)

In addition to clearly outlining the ownership interest in the Shares, AUSA Bowman further states in his June 12, 2013 email to Jason de Bretteville, Kaplan's attorney:

"***There currently is no levy from the IRS*** over the certificate, so I've been told that it cannot go to the IRS…"

**Exhibit 6 to Opposition** (Document 8-4 Filed 09/14/15 Page 73 of 80 Page ID #:609)

Accordingly, the first time that LFG might be charged with any knowledge that the IRS had levied on the Shares was when Kaplan's counsel asked for their return after the dismissal of the charges on <u>April 14, 2014</u>. **Exhibit 5** (Bates No. 74). Moreover, as discussed below, advising Kaplan's criminal defense counsel in an e-mail hardly meets the procedural requisites for levy under the Internal Revenue Code.

The facts in *Supermail Cargo* illustrate that equitable tolling applies to this case; and as such, dismissal at this stage of the proceedings is inappropriate. The plaintiff, Supermail, was a clothing importer and seller. It paid an estimated duty to the United States Customs Service ("Customs") each time it imported clothing. An importer who disagrees with the estimated duty may seek a refund by filing a

"protest" with Customs, pursuant to 19 U.S.C. § 1514.  If the protest is granted, Customs refunds the amount of the overpayment.  Supermail employed a law firm to file protests with Customs.  The IRS determined that the law firm owed a substantial tax liability.  In August 1988, the New York IRS office asked Supermail about its relationship with the law firm.  Supermail, both orally and in writing, told the IRS that its sole relationship had been that of attorney and client and there was no current relationship with the law firm.  Nevertheless, without notice to Supermail, the New York IRS office placed levies on some of the refunds that Customs owed to Supermail to satisfy the law firm's taxes.  On October 25, 1989 and December 14, 1989, the IRS issued notices of the levies to Customs on refunds due Supermail to pay the taxes.  Neither the IRS, nor Customs informed Supermail (or for that matter the law firm) of the levies.  Only Customs received the levy notices.  68 F.3d at 1205.

Supermail, continued to inquire unsuccessfully of Customs about the status of its refunds.  Thereafter, Customs incorrectly informed Supermail that the refunds had been delayed inadvertently but would eventually be paid.  On February 24, 1992, Customs finally told Supermail the IRS had levied on its refunds in 1989 and, therefore, Supermail would not receive them.  On June 9, 1992, Supermail filed a request for the return of its property with the New York IRS office.  The IRS initially ignored it.  Later, after another request, the acting manager of the New York IRS office asked that additional information be submitted.  On October 21, 1992, the IRS New York office informed Supermail that it must file its request with the Fresno IRS office.  Again, Supermail promptly complied with the IRS's instructions by filing a request for the return of its property with that office on October 29, 1992.  68 F.3d at 1206.

For the next several months, the IRS failed to issue a decision. On April 8, 1993, Supermail again wrote to the IRS, threatening to file a civil action unless the

IRS responded to its request.  The IRS told Supermail that it would act on its request if Supermail gave additional information.  Supermail promptly complied, forwarding the requested information to the Los Angeles, California IRS office, which denied the request on July 26, 1993 as untimely.  On October 8, 1993, Supermail sued to recover the refunds.  The trial court dismissed the case as barred by the statute of limitations.  The Ninth Circuit reversed stating that Supermail had stated sufficient facts of equitable tolling to overcome a motion to dismiss.  68 F.3d at 1209.

The improper incarceration of Kaplan, the mailing of notices to various addresses where the Government knew Kaplan was not and the mailing of notices to LFG's addresses by ordinary mail after it ceased operations because of the Government's arrest and seizures of its property provide ample evidence that LFG had no idea that the Government had seized its property to satisfy Mazur's taxes until April 14, 2014 when the USAO told Kaplan's criminal defense lawyer that the FBI had given the Shares to the IRS to pay Mazur's taxes.  **Exhibit 5** (Bates No. 74).  These facts support for equitable tolling.

### 3.    Notice To The FBI Does Not Pass Constitutional Muster.

The Government also claims that it complied with the requirements of I.R.C.§ 6335(a) when it personally served the notice of levy on the FBI because the FBI physically "possessed" the Shares after it seized them from LFG.  Opp. 18:9-16.  Even if this "notice" may appear on the surface to comply with Section 6335(a), it simply does not come close to the requirements of due process.  The Supreme Court framed the minimum notice requirements to comport with Constitution's due process requirements:

> "[Thus], the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  ***The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably***

1    ***certain to inform those affected***, or, where conditions do not
2    reasonably permit such notice, that the form chosen is not
     substantially less likely to bring home notice than other of the feasible
3    and customary substitutes."

4    *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15

5    (1950) (citations and quotations omitted) (emphasis added).

6            Thus, if the Government knows of a person's interest in property, it must

7    notify that person directly before adversely affecting their interests. *Schroeder v.*

8    *City of New York*, 371 U.S. 208, 212-13 (1962).  Because of his house arrest, the

9    Government knew Kaplan's exact whereabouts.  Thus, it knew exactly where to

10   give LFG notice of the levy.  Failure to give LFG notice can only be attributed to

11   gross negligence or, given the history of this matter, the Government's

12   malfeasance.

13          That rule may not always apply to the seizure of property under I.R.C. §

14   6335.  *Dieckmann v. United States*, 550 F.2d 622, 623 (10th Cir. 1977) ("We must

15   assume that Congress in fixing the nine-month period in section 6532 within which

16   an action may be brought assumed that owners of property would exercise

17   reasonable diligence in looking after it.  Thus the period within which the action

18   may be brought under section 6532 was designed to provide an opportunity to a

19   person of reasonable diligence (in keeping track of his own property) to discover if

20   someone with whom it had been entrusted no longer had it in his possession.  Thus

21   the period was fixed and it will be applied.")  Here, LFG had not "entrusted" the

22   Shares to the FBI when it illegally seized them.  Kaplan's house-arrest removed

23   the possibility that LFG had any chance to exercise "reasonable diligence" to know

24   what happened to the Shares.  Under these circumstances, due process requires

25   more notice than that given to LFG.

26

27

28

**4.     The Notice of Levy Is Inadequate Under I.R.C. § 6335.**

I.R.C. § 7426 permits the non-taxpayer, such as LFG, whose property has been wrongfully levied upon to bring civil suit against the Government.  The statute of limitations for claims brought under section 7426 is nine (9) months from the date of levy.  26 U.S.C. § 6532(c)(1).  The nine-month period runs from "the date of the levy."  I.R.C. § 6502 defines that date as "the date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given "to the owner or possessor of the personal property."

In turn, I.R.C. § 6335(a) requires:

> As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property, (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made.  If the owner cannot readily be located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address.  Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized, and, in the case of real property, a description with reasonable certainty of the property seized.

If the IRS failed to give proper notice under section 6335(a), there has not yet been a "date of levy" within the meaning of section 6532(c) and the nine-month statutory clock has not yet started to run.  *Bonacci v. United States*, 864 F. Supp. 1086, 1087 (D. Utah 1993).

The Government urges that LFG received notice of levy when the IRS served either the Mazur tax lien or the Notice of Levy on July 13, 2013 on the FBI.  Opp. 18:9-18. .  The Government seems to be saying that it also gave such notice to LFG "directly" when an IRS agent recorded a Notice of Federal Tax Lien with the Los Angeles County Recorder and mailed same to LFG's following addresses: 2224

Main Street, (Santa Monica, California) and 1100 Glendon Avenue, (Los Angeles, California.)[10]

The Government nowhere states that it served the notice of levy on LFG, acknowledging by conspicuous omission that it never actually served or even attempted to serve LFG with notice that its property had been seized to pay Mazur's taxes.  The Government states that it served the Notice of Federal Tax Lien on LFG at its former business offices but for some reason deliberately chose not to serve LFG with the Notice of Levy.  The Government claims that it gave adequate Notice of Levy by serving the FBI.  Mailing of the Notices of Federal Tax Liens reveals the Government knew that it had to give such notice to LFG.   In fact, it inexplicably tried to do so by mailing notice to addresses that it knew were no longer viable because of Kaplan's house arrest and the seizure of LFG's assets.  It cannot claim now that it was unaware of or had no duty under I.R.C. § 6335 to give personal notice of the liens and levy to Kaplan as LFG's agent.

"[T]he extraordinary powers granted to the government of levying, seizing and selling property for tax collection purposes *without prior judicial hearing* are dependent upon *strict compliance with the procedures prescribed by statute*, … ." *Goodwin v. United States*, 935 F.2d 1061, 1065 (9th Cir. 1991) (emphasis added); *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975).  Thus, Section 6335(a) "requires the government to have personally served a written notice to [LFG] or to have left the written notice at [LFG's] usual place of abode."  *Goodwin*, *supra*, 935 F.2d at 1064.  The Government here did neither.

Whatever notice conferred by mailing the Notice of Federal tax Liens to LFG's defunct addresses clearly does not meet this notice requirement.  Further,

---

[10] Of course, one has to ask what kind of notice was imparted to LFG when the Government recorded notices concerning personal property (the "Shares") in the real estate records since perfection of such a lien is typically with the California Secretary of State.

because section 6335(a) and (b) requires strict compliance, the property owner [LFG] need not prove prejudice." *Id.* at 1065. "A stickler for enforcing the statutory notice it is entitled to receive, the government should be no less punctilious with respect to the statutory notice it is required to give." *Kulawy* v. United States, 917 F.2d 729, 735 (2d Cir. 1990). Mailing notices to addresses that the Government knew were vacant presents a complete failure to follow Section 6335(a).

### D.   LFG OWNS THE SHARES, NOT MAZUR.

At bottom, this case is a dispute over who owns the Shares. Without question, the Shares are registered in the name of and issued to LFG. Opp. at 4:24-25. That has always been LFG's position and that is the position it takes in the Motion. Motion at 12:1-15:12. The Government offers no contrary facts or argument. Rather, the Government asks the Court to draw an inference that the Shares are actually owned by Mazur. Opp. at 4:23-7:7. As a matter of procedure, any inference that the Court might draw about the ownership of the Shares must be drawn in favor of LFG.[11]

To that end, the Government offers a number of pieces of "evidence" that it claims shows that Mazur was the "true" owner of the shares. Conspicuously, that "evidence" offers no unambiguous proof that LFG conceded that Mazur has some ownership interest in the shares. Rather, the Government offers the following:

1. An April 4, 2013 letter wherein the Government claims Kaplan represented that he and Mazur agreed to split the Shares (Opp. at 5:6-10).

---

[11]   The Government asks the Court to treat the Opposition as being in effect a motion to dismiss under Fed. R. 12(b)(6). Opposition at 9:24 to 10:2 citing *United States v. Ritchie*, 342 F.3d 903, 906-07 (9th Cir. 2003). To the extent that is the case, the Court must accept LFG's factual allegations in its motion/petition as true, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) and draw all reasonable inferences in LFG's favor. *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996).

That letter simply reflects the understanding of Kaplan's criminal defense counsel that the remainder of the shares *could* be distributed as income to Mazur, not that Mazur had a present *ownership* interest in the shares.  Indeed, it simply contains Kaplan's agreement to cooperate with the Government with respect to the ultimate disposition of the Shares, whatever that might be:

> "If there are concerns regarding Mr. Mazur's partial ownership interest, Ari is willing to cooperate in any lawful undertaking or disposition, including splitting of the certificate, that might be deemed necessary to avoid any prejudice to the Government or Mr. Mazur."[12]

This is not an admission that Mazur has a direct ownership interest in the Shares.  To the contrary, after numerous email exchanges with both Mazur's counsel (Marc Harris) and Kaplan's counsel, the Government made the following proposal, expressly referring to the remainder of the Shares as "the LFG certificate/shares":

> So - absent an objection from you (Kaplan's counsel), we [the Government] will do the following:
>
> o   Half of the shares (718,494) will be issued to Mr. Kaplan
>
> o   The other half will be kept in the name of LFG, and will be returned to the FBI (which originally seized the certificate)
>
> o   My understanding is that the IRS then intends to seize the LFG certificate / shares, and if that takes place, then the certificate would be provided to them from the FBI.  At that point, Mr. Mazur can litigate return of the certificate/or whether the IRS can lawfully seize those shares (which I understand may involve your claim that his tax obligation has expired)[13]

Kaplan agreed to that.  And that is how things remained until the criminal case was dismissed.

---

[12]   **Exhibit 1 to Opposition** (Document 8-1 Filed 09/14/15 Page 21 of 119 Page ID #:354)

[13]   **Exhibit 6 to Opposition** (Document 8-4 Filed 09/14/15 Page 68-69 of 80 Page ID #:604-605).

2.     The Shares were in Mazur's office at LFG (Opp. at 4:24 – 5:1) While this might be evidence that Mazur's claimed a partial or potential interest in the Shares, it does not establish that LFG agreed with that claim.[14]

3.     Mazur was LFG's president in 2008 (Opp. at 5:3-5)  The Opposition, however, contains no evidence of Mazur's capacities as director, shareholder or officer when the Shares were seized in 2013.

4.     50% of the Shares were paid over to Kaplan; and as such, the Court should assume that the other 50% of the Shares were held by LFG as Mazur's alter ego or nominee (Opp. at 5:19-23)  Given LFG's refusal to place the Shares in Mazur's name and the Government's assent to that as evidenced in **Exhibit** 5 (Bates 74-77), there is no reason to assume anyone but LFG owned the Shares.

5.     Mazur's objection to the Government holding the other half of the shares (Opp. at 6:22-26);  Mazur's claim to the Shares is of no consequence because LFG never acknowledged it.  LFG always remained the record owner of the Shares. Likewise any claim made by Mazur to the Shares in his July 24, 2014 letter to the IRS does not defeat the rights of LFG, without more.

6.     Kaplan's declaration indicating that he had no personal interest in the remaining 718,494 shares held by the Government (Opp. 6:14-16);[15]  Kaplan's disclaiming his "personal" interest in the Shares does not mean the Shares do not belong to LFG, much less that they belong to Mazur.  Rather, this is entirely consistent with the fact that LFG, not Kaplan, is the true owner of the Shares.

---

[14]     RVLT sent the Shares to LFG, not Mazur.  The shares were only in Mazur's office because they arrived by overnight mail and Kaplan was not in the office so the office manager put the overnight envelope in Mazur's office.

[15]     Absent a showing that Kaplan was the alter ego of LFG.

Taken as a whole, there is no basis on which the Court could conclude that Mazur owned the Shares.  At best Mazur made a claim for them, a claim that LFG has rejected and which Mazur has now recanted.

## E.   SOVEREIGN IMMUNITY DOES NOT BAR LFG'S RELIEF FOR TURNOVER OF THE SHARES.

By the Motion, LFG simply seeks to have the Government turnover the Shares.  It does not and cannot seek any other relief.   Sovereign immunity does not bar the turnover of property seized in a criminal proceeding.  *Ordonez v. United States*, 680 F.3d 1135, 1137 (9th Cir. 2012).[16]  To the extent that the wrongful levy claim is part of the matters before the Court, it is clear that sovereign immunity does not forbid such claims.  26 U.S.C. § 7426(a)(1).

## F.   IRS'S POSSESSION OF THE SHARES DOES NOT RENDER THIS MOTION MOOT.

The Government contends the relief under 41(g) is moot because it no longer has the Shares, the IRS does.  Opp. 11:10-12:20.  The gist of this argument is that the IRS is not part of the Government.  However, that position is at odds with a position taken by the Government in an earlier brief.  LFG sued the IRS, along with United States, in connection with its adversary Complaint filed in the Bankruptcy Court.[17]  In its motion to dismiss that complaint, the Government stated:

> With regards to the Internal Revenue Service, the United States has not waived its sovereign immunity to permit suit against the IRS. Plaintiff may not sue agencies, such as the IRS, unless Congress has specifically waived sovereign immunity.  (citations omitted.)  ***A suit against the IRS is essentially a suit against the United States***. See

---

[16]   "Federal Rule of Criminal Procedure 41(g) provides a mechanism by which any person may seek to recover property seized by federal agents. The Rule states that if a motion to return property is granted, 'the court must return the property to the movant." Fed. R. Crim. P. 41(g).  But where, as here, the subject property has been lost or destroyed, Rule 41(g) is silent as to what alternative relief, if any, the movant may seek."

[17]   Adversary No. 2:15-ap-01070-BR (Bankr. C.D. Cal.)

*Gilbert v. Da Grossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).  The IRS should be dismissed as a defendant and the United States should be the only real party in interest.  (emphasis added)

Having admitted the obvious fact that the IRS is part of the United States, it is clear that a petition against the United States for the possession of the Shares is not rendered moot by the IRS having possession of the Shares.  If the Court orders the United States to turn over the Shares, that order would necessarily include the IRS.

## G.   LFG'S BANKRUPTCY ESTATE DEFEATS ANY HIDDEN INTEREST OF MAZUR IN THE SHARES.

The Shares were registered in LFG's name.  This creates a presumption that they belong to LFG.  *Kerrigan v. American Orthodontics Corp*., 960 F.2d 43, 46 (7th Cir. 1992)[18]  The Government can only levy on the interest actually held by Mazur subject to any infirmities or equities that might exist in or against at the Shares.  Thus, to support its nominee theory, the Government claims Mazur has some species of hidden rights in the Shares, such as an equitable lien or a constructive trust.  As a debtor in possession, LFG can avoid secret or hidden liens. *In re General Coffee Corp*., 828 F.2d 699, 704 (11th Cir. Fla. 1987) ("Section 544(a), the "strong-arm" provision of the Bankruptcy Code, permits a trustee to avoid secret liens against property in the debtor's possession.  It grants a trustee the rights of an essentially ideal lienholder against property in which the debtor does not possess complete title. ").  Once, those rights are avoided, the basis of the Government's lien disappears.  Sovereign immunity does not bar any such action

---

[18]   The Uniform Commercial Code § 8-207(1) provides that "Prior to due presentment for registration of transfer of a certificated security in registered form, the issuer or indenture trustee may treat the registered owner as the person exclusively entitled to vote, to receive notifications, and otherwise to exercise all the rights and powers of an owner."

by LFG's bankruptcy estate.  11 U.S.C. § 106.  As such, LFG can defat any lien or levy on Mazur's assets.

**CONCLUSION**

For the reasons set forth above, the United States has no further need for the Shares and no valid lien upon them. The Court should order the United States to turnover the Shares over to LFG.


Dated: September 21, 2105                    WEINTRAUB & SELTH, APC

                                                    By: /s/ Elaine v. Nguyen
                                                        Daniel J. Weintraub
                                                        James R. Selth
                                                        Elaine V. Nguyen
                                                        Attorneys for Moving Party,
                                                        LONDON FINANCE GROUP, LTD.